**Robert Kenneth NICHOLS, Respondent,**

v.

**Alice Faye NICHOLS, Appellant.**

**No. ED 75921.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 14, 2000.

S.W.2d at 511.

Merle L. Silverstein, Jeffrey A. Cohen, Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Clayton, for appellant.

James R. Hanlin, Clayton, for respondent.

RICHARD B. TEITELMAN, Presiding Judge.

Wife appeals from the judgment and decree dissolving the parties' marriage. Wife claims the trial court erred (1) in its distribution of marital property by ordering Wife rather than Husband to pay the mortgage on the marital residence, and (2) in failing to order Husband to pay maintenance to Wife to meet her reasonable needs which, she argues, should include the care and support of the parties' two grandchildren who had lived with the parties prior to their separation. We affirm.

## FACTUAL BACKGROUND

The parties were married in the summer of 1964. They separated in October of 1997. Husband filed a Petition for Dissolution of Marriage approximately two months after the separation. Trial was held on December 8, 1998. At the time of the hearing, Husband and Wife were 59 and 57 years old, respectively. The parties adopted two female children during their marriage, both of whom were in their thirties at the time of the hearing.

Wife met Husband while he was working with the City of St. Louis Police Department. Husband has done police work his entire career, beginning in the City of St. Louis, where he worked until he retired in 1985. Thereafter he was employed by the Maryland Heights Police Department, where he continues to work. After the parties were married Wife worked at Monsanto from 1964 until March of 1996, when she retired. Wife's career at Monsanto consisted of secretarial work at first, but over the years developed into a very highly specialized area of paralegal work involving international patent applications.

In 1972 the parties purchased the marital home in Maryland Heights. The trial court found the residence had a fair market value of $160,000 with an outstanding mortgage debt of approximately $64,000, for a net equity value of $96,000.

In 1987, using marital assets, the parties purchased a vacant 5–acre lot on Mack Avenue in Maryland Heights for $59,500. In 1988 the parties purchased two adjacent lots on Hedda Avenue in Maryland Heights, one vacant and one with a house on it; the two parcels were purchased together for $50,000. The parties took out an $80,000 mortgage loan on their marital residence; $30,000 of the mortgage loan went to improvements of the marital residence itself and the remainder was used to purchase the properties on Hedda. At the time of trial the balance on the marital residence mortgage loan had been reduced to $64,000, and the house on Hedda produced a gross rental income of $475 per month. The court found the combined fair market value of the three properties located on Hedda and Mack Avenue to be $127,000.

It is undisputed that Husband engaged in significant marital misconduct. At trial Husband admitted that he had engaged in a longstanding affair with another woman for approximately three-and-one-half years prior to the time of the hearing. When Husband separated from Wife, approximately 14 months prior to the trial hearing, he began residing with the other woman.

At the time of trial Husband's net (after-tax) employment income was $2926 per month. Additionally, he received $1054 per month net income from his City of St. Louis retirement account, and $475 per month in *gross* rental income from the house on Hedda. The evidence showed that his total net monthly income was, at a minimum, approximately $4200. He testified to living expenses of approximately $2500 per month. By far the biggest single expense item listed in his Income and Expense Statement was $1250 per month for recreation, which was for expenses related to his hobby of racing cars. Wife testified that her net (after-tax) income was approximately $3300 per month, consisting entirely of investment income from her retirement accounts. Wife further testified that her reasonable expenses, as of the time of trial, were approximately $5600 per month.

Those expenses included substantial sums for care and support of the parties' two granddaughters, Jennifer and Ashley. At the time of trial, these two grandchildren were ages 15 and 11 respectively. The youngest, Ashley, had resided with the parties (prior to their separation) all of her life, and the oldest, Jennifer, for approximately twelve years. The grandchildren's mother occasionally resided with the parties during that time span, but she had intermittent criminal problems and

drug problems, and at the time of the hearing had criminal charges and sentencing pending against her arising from drug use. During the time that the grandchildren had resided with the parties, in addition to providing the primary care and parenting for the grandchildren, the parties provided virtually all of the financial support for the grandchildren. Following the separation, Wife was granted letters of guardianship for the two girls by the probate court on June 1, 1998. At the time of the dissolution hearing there was no realistic expectation of obtaining any future financial support for the grandchildren from either of their parents; Wife testified that she expected to raise the grandchildren, including sending them to high school and college. Wife stated that she was seeking an award of maintenance from Husband which included "the expenses I have with the grandchildren," which she testified had been a part of the couple's standard of living. The final amended judgment and decree ordered that no maintenance was to be paid by either party.

The court made findings with respect to the division of marital property. First, the court awarded Wife the marital residence, finding its fair market value to be $160,000, with a mortgage balance of approximately $64,000, resulting in a net value of $96,000, and ordered Wife to pay the outstanding mortgage. Husband was awarded the properties on Mack Avenue and Hedda, which were free and clear of any indebtedness, and cumulatively valued by the court at $127,000. The parties were each awarded their respective retirement accounts. The court found that Husband's retirement accounts, including his 401(k) Plan, his 457 Plan and his St. Louis Police retirement fund, were valued at $576,457. Wife's retirement fund from Monsanto was valued at approximately $866,000. The court found that that fund, together with

IRA and credit union accounts, totaled $922,346. Miscellaneous other assets and items of personalty, most of relatively modest value, were divided among the parties. In total, Wife was awarded $1,027,476 in assets, and Husband was awarded $720,105 in assets—reflecting a division of approximately 59% to Wife and 41% to Husband. Additionally, the trial court ordered Husband to pay Wife's attorneys fees in the amount of $6,500.

Wife appeals, challenging the trial court's distribution of marital property insofar as it required her to pay the mortgage debt on the marital residence, and also challenging the court's denial of her request for maintenance.

### DISCUSSION

We review the trial court's judgment in a dissolution decree pursuant to the general principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc.1991). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Id.* We view the evidence and the reasonable inferences therefrom in the light most favorable to the decree. *Id.* If there is a conflict in testimony, we defer to the trial court's determination of the credibility of the witnesses. *In re Marriage of Julian*, 868 S.W.2d 182, 184 (Mo.App. E.D.1994).

In her first point on appeal, Wife contends that the trial court erred in ordering her to pay the mortgage on the marital residence, in that the mortgage was obtained by the parties "to purchase income-producing rental properties," which were subsequently awarded to Husband free and clear of any indebtedness.[1] Wife argues that the court failed to properly con-

---

1. We note that as worded this point relied on, although probably inadvertently so, is somewhat misleading. The record indicates that only *part* of the mortgage loan was used to purchase the *single* income-producing proper-

ty on Hedda. A very substantial part of the loan proceeds—over 37%—were used to improve the marital residence itself, which Wife was awarded.

sider several of the factors set forth in § 452.330.1 RSMo Cum.Supp.1998, and that it is unjust for her to bear the burden of the home mortgage when the income-producing rental property derived from that mortgage was awarded to Husband free and clear.

Although the division of marital assets and debts [2] need not be equal, it must be just and equitable. *M.A.Z. v. F.J.Z.*, 943 S.W.2d 781, 786 (Mo.App. E.D. 1997). Division of the marital estate is consigned to the sound discretion of the trial court. *Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo. banc 1984). That discretion is considerable, and we will interfere only when the division is so heavily weighted against one party as to amount to an abuse of discretion. *M.A.Z. v. F.J.Z.*, 943 S.W.2d at 786. Absent such an abuse of discretion, we will defer to the trial court even if the evidence could support a different conclusion. *Langdon v. Langdon*, 792 S.W.2d 645, 646 (Mo.App. E.D.1990).

We find no abuse of discretion. There is no indication the trial court failed to consider any of the relevant statutory factors. There were factors which militated in favor of Wife receiving the marital residence, as well as a substantially disproportionate share of the overall marital assets. Those factors are clearly reflected in the court's decree, which awarded Wife approximately 59% of the property, including the marital residence and well over $900,000 in income-producing assets. Wife cites the case of *Michael v. Michael*, 747 S.W.2d 645 (Mo.App. W.D.1988), for the general proposition that one spouse should not be saddled with unreasonable mortgage debt. *Michael*, however, is distinguishable from the case at hand. In *Michael* the Court found that although the

wife had received 55% of the property, that property came encumbered with such high mortgage payments each month as to create "an impossible burden" on her, and amounted to an abuse of discretion because it "could only result in the forced liquidation of those properties, which would drastically reduce the opportunity to realize their market value." *Id.* at 648. Here, however, the record reveals that the monthly mortgage payment on the marital residence is $652. Given the overall share and amount of marital assets Wife was awarded and the income she can reasonably expect to derive therefrom, the monthly mortgage payment is not an "impossible burden" on her, nor will it force the liquidation of any assets. Point I is denied.

In Point II, Wife asserts that the trial court abused its discretion by denying her any maintenance, in that she lacks sufficient property and is unable to support herself through appropriate employment in order to provide for her reasonable needs, including but not limited to the care and support of the parties' two grandchildren. Wife argues that support of the grandchildren was part of the "standard of living" that the parties had established for many years during their marriage. Husband counters that Wife is able to support herself through employment and that, in any event, the court's denial of maintenance is supported by substantial evidence that Wife at least has sufficient income from her property to meet her own needs; he contends the expenses of care and support for the grandchildren may not properly be considered in determining the need for an award of spousal maintenance.

A trial court's determination of whether to award maintenance is discretionary, and appellate review is only to

---

**2.** Formerly, trial courts were not statutorily obligated to allocate marital debts, even though it was considered commendable practice to do so, since debts incurred during marriage are not "marital property." See *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 950 (Mo.App. E.D.1993). That has now changed with the legislature's 1998 amendment to § 452.330, which inserted the words "and marital debts" in the introductory paragraph of subsection 1.

determine if that discretion has been abused. *Nelson v. Nelson,* 937 S.W.2d 753, 756 (Mo.App. S.D.1997). The court's decision whether to award maintenance is governed by § 452.335 RSMo 1994.[3] The statute provides a "threshold test," under which maintenance may be awarded to a spouse only if the court finds the requesting party (1) lacks sufficient property to provide for his or her reasonable needs, and (2) is unable to support himself through appropriate employment. *M.A.Z. v. F.J.Z.,* 943 S.W.2d at 788; *McMullin v. McMullin,* 926 S.W.2d 108, 112 (Mo.App. E.D.1996); *Arnold v. Arnold,* 771 S.W.2d 914, 915 (Mo.App. W.D.1989). Under this statutory framework "reasonable needs" is the standard for determining the expenses properly allowable to a party seeking maintenance; and the court must determine whether the expenses in question constitute "reasonable needs" of the requesting party. *Brooks v. Brooks,* 957 S.W.2d 783, 790 (Mo.App. W.D.1997). In determining maintenance, "reasonable needs" as used in § 452.335.1 does not automatically equal the standard of living established during the marriage. *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 856 (Mo.App. E.D. *en banc* 1977). Although the standard of living established during the marriage was the usual standard for an award of alimony prior to enactment of the Dissolution Act of 1973, it now is merely a factor to be considered. *M.A.Z. v. F.J.Z.,* 943 S.W.2d at 788–89; *McMullin v. McMullin,* 926 S.W.2d at 112.

The evidence at trial indicated Wife's net (after-tax) income from her Monsanto and other accounts to be approximately $3300 per month. At the time of trial she claimed monthly expenses of approximately $5600 per month. Of these claimed amounts, the record reveals approximately $1500 per month involved expenses directly related to care and support of the two grandchildren. The record indicates all of the listed expenses of care and support of the grandchildren were reasonable in nature and amount. As to the expenses claimed by Wife herself, while the they were for the most part reasonable, there was a $500–per–month miscalculation.[4] With respect to several others—related to vacation/travel, other recreation, and gift-giving, which together totaled $800 per month or nearly $10,000 per year[5]—it was within the trial court's discretion to conclude that they were at least twice the level required to sustain Wife's "reasonable needs" in those areas. Further, it was within the trial court's discretion to determine that Wife's overall needs amounted to at least $1000 per month less than her overall claimed expenses of $5600 per month. But by any measure, this would still leave an overall amount of monthly expenditures substantially greater than what could be met merely by the $3300 monthly income from Wife's property. The fundamental issue in this case, then, is whether the $1500 in monthly expenses for care and support of

---

**3.** All further references to this statute are to RSMo 1994. In relevant part, § 452.335 provides:

"1. [T]he court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

**4.** Wife included a listed expense, in her Statement of Income and Expenses, of $500 per month for income tax. But her claim for maintenance is explicitly based on an estimated *net* income.

**5.** Wife listed expenses for herself of $400 per month for "vacation," $200 per month in "other recreation" activities, and an additional $200 per month for "Gifts (Birthday/X-Mas)." Given that the standard of living during the marriage does not automatically establish the same level of need subsequent to dissolution, these particular items are the types of "needs" which may most bear scrutiny. See *M.A.Z. v. F.J.Z.,* 943 S.W.2d at 789–90.

the grandchildren are properly includable in determining maintenance.

We find that they are not, and for several closely related reasons.

■ First, maintenance is for the needs of the recipient spouse; maintenance is not for child support. Although a few states have features in their statutes which occasionally blur the distinction between the two, *Fink v. Fink,* 120 N.C.App. 412, 462 S.E.2d 844, 851 (1995), the general rule is that awards of spousal maintenance and child support are two distinctly separate concepts, and the former does not include the latter. 27B C.J.S. *Divorce,* Sec. 309(a), p. 108 (1986). Missouri follows the general rule. Maintenance payments must be limited to the needs of the party requesting support. *Gerecke v. Gerecke,* 954 S.W.2d 665, 669 (Mo.App. S.D.1997). Maintenance awards proceed solely from "the need for reasonable support by one spouse from the other after the dissolution of the marriage." *Cates v. Cates,* 819 S.W.2d 731, 734 (Mo. banc 1991).

■ Second, the relevant statutes do not authorize awards of maintenance to include anything more than the reasonable needs of the recipient spouse. Dissolution of marriage is a purely statutory action, unknown to the common law. *Cates v. Cates,* 819 S.W.2d at 734. The statutes relating to dissolution, therefore, dictate and limit the authority of the court to order support obligations. *Id.* Section 452.335 is the statute governing support obligations of spousal maintenance. It does not provide that amounts expended for the direct care and support of a dependent child who resides with the spouse seeking maintenance may be included in determining the need for maintenance. Rather, the statute speaks solely in terms of whether the requesting party lacks sufficient property to meet "his" reasonable needs, and whether that party is able to support "himself" through appropriate employment.

■ Third, although Husband may have a moral obligation, he is not legally responsible for the support of his grandchildren. His past support has been purely voluntary; and there is no evidence in the record of an agreement, or court order, which creates such a legal obligation. See Laura W. Morgan, *Doing It Again: Grandparents Paying Child Support,* 35 Trial 37, 38 (December, 1999) (hereinafter, *"Morgan."*) There are no Missouri cases directly on point, and only a few cases from other jurisdictions concerning maintenance and the provision by parties for the support of grandchildren during the marriage; those cases do not support Wife's position. See *Baker v. Baker,* 866 P.2d 540, 545–46 (Utah App.1993), which held that in determining the need of a recipient spouse for maintenance, the needs of the grandchildren residing with the spouse are not to be considered; see also *Franklin v. Franklin,* 75 Ariz. 151, 253 P.2d 337, 340 (1953). *Savoie v. Savoie,* 245 N.J.Super. 1, 583 A.2d 762, 764 (App. Div.1990), in which the court upheld a judgment requiring a party to pay his former spouse support for a grandchild who had resided with them during the marriage, is clearly distinguishable from both *Baker* and the present case. In that case, the husband had previously agreed to a court order granting him and his wife custody of the grandchild, and had further assented to a support order after he left the marital residence. *Savoie,* 583 A.2d at 762; *Morgan* at 38. The record here shows no such basis for an obligation of support.

■ Wife argues: "[U]nder our current statutory framework, a court could theoretically award maintenance to a spouse so that she could maintain a previous standard of living of breeding and raising horses on her property. Hence (children being at least as important as horses), Wife here should be provided maintenance to sustain her previous standard of living to include . . . caring for and supporting the parties' grandchildren."

We disagree. Wife's attempt to bootstrap child support into the maintenance statute by calling it part of the previous "standard of living" amounts to a strained interpretation of the statute, and one that would render a meaningless nullity the well-settled principle that maintenance is only for the needs of the recipient spouse. We hold that "standard of living," as properly construed in the context of the *maintenance* statute, refers solely to the standard of living previously enjoyed by the married parties themselves, and does not also refer to the standard of living enjoyed by any dependent grandchildren who resided with them during the marriage——just as, by the very same token, the "standard of living" referred to in the *child support* statute refers solely to the standard of living enjoyed by the children prior to dissolution.[6] See § 452.340.1(3) RSMo Cum.Supp.1999.

Finally, at oral argument Wife's counsel urged this Court to hold for "public policy reasons" that expenses related to the support of dependent grandchildren should be included, in cases such as this, in determining a requesting spouse's need for maintenance. At one time most states did have so-called "poor laws" or filial support laws requiring grandparents to support grandchildren; and some commentators have alluded to the emergence of a legislative trend moving back to that direction. See *Morgan, supra,* at 37–38. There is presently no statutory authorization in Missouri for an indirect form of child support under "maintenance." Thus, however troubling we may find Husband's abandonment of his longstanding support for his grandchildren, such a question is a matter for the legislature, not the courts, to decide. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 261 (Mo. banc 1998).

6. "Standard of living" is a non-technical term of everyday usage, whose plain and ordinary meaning is commonly understood. The dictionary defines it as: "a minimum of necessities, comforts, or luxuries that is essential to maintaining a person in customary or proper status or circumstances." *Webster's Third New International Dictionary Unabridged* 2223 (1976).

*CONCLUSION*

For the foregoing reasons, the judgment of the trial court is affirmed.

Judge CLIFFORD H. AHRENS and Judge LAWRENCE E. MOONEY concur.