Gary S. CROSS, Jr.,
Petitioner/Respondent,

v.

Diana Lynn CROSS,
Respondent/Appellant.

No. ED 76984.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 31, 2000.

Dennis Buchheit, Edward J. Hanlon, St. Louis, MO, for appellant.

Patricia A. Riehl, Hillsboro, MO, for respondent.

MARY RHODES RUSSELL, Judge.

Diana Lynn Cross ("Mother") appeals from a judgment of the trial court dissolving her marriage to Gary S. Cross, Jr. ("Father"). She appeals from those portions of the judgment splitting primary physical custody of the parties' two minor children, and ordering Father to pay the outstanding marital debts, without identifying those debts either by amount or by creditor. We find no error and affirm.

The parties were married in July 1992. There were two children born of the marriage, Cory Cross, born April 6, 1992, and Sara Cross, born May 7, 1994. Father filed a petition for dissolution in April 1997, seeking primary physical and legal custody of both children. Mother filed a counter-petition for dissolution, in which she also requested custody of both children.

Although Father initially sought custody of both children, he proposed during trial a split custody schedule, whereby he would have primary physical custody of Cory, and Mother would have primary physical custody of Sara.

The trial court entered its judgment and decree of dissolution, in which it awarded the parties joint legal custody of both minor children, with primary physical custody of Cory to Father, and primary physical custody of Sara to Mother. The judgment, in part, also provided that Father was to pay the outstanding marital debts, but it did not identify those debts either by amount or by creditor. Following the denial of the relevant portions of her Motion to Amend the Judgment or for a New Trial, Mother timely filed this appeal.

■ We review the trial court's judgment in a dissolution decree pursuant to the general principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Nichols v. Nichols*, 14 S.W.3d 630, 634 (Mo.App.2000). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We view the evidence and the reasonable inferences therefrom in the light most favorable to the decree. *Id.* If there is a conflict in testimony, we defer to the trial court's determination of the credibility of the witnesses. *Id.*

■ In her first point, Mother contends the trial court erred in splitting the primary physical custody of the parties' two minor children.

■ Absent exceptional circumstances, the children of divorced parents should not be separated, but the trial court does have the power to decree separation if it is in accordance with the best interests of the children. *Atwood v. Atwood*, 664 S.W.2d 673, 674 (Mo.App.1984). We afford trial courts greater discretion in determining child custody than in other matters, and presume that the trial court considered all of the evidence and awarded custody in the best interests of the children. *Lacadin v. Herron*, 920 S.W.2d 196, 197 (Mo.App.1996). We will not interfere with the trial court's disposition unless the children's welfare compels us to do so, and may not substitute our judgment for that of the trial court so long as credible evidence supports the trial court's award. *In re Marriage of Dieterle*, 960 S.W.2d 556, 559 (Mo.App.1998).

The record reveals that Sara is chronically ill and suffers from a medical condition known as arterial venous malformation, for which she requires in-home nursing care. She has had strokes, heart attacks, multiple surgeries, and has long-term learning and developmental disabilities. Although Sara was 5 years old at the time of trial, she was developmentally equivalent to a six to twelve month old. Cory, however, was a relatively healthy 7 year old. Because Mother devoted a vast amount of attention to Sara, she was unable to devote much time to Cory. Mother suffered from depression and disassociative identity disorder and had multiple

personalities, and there was evidence that her condition affected her ability to care for the children.

There was no evidence that the siblings were especially close. Sara can barely communicate and the children can never engage in common activities, as Sara is confined by braces on her feet and a wheelchair, and requires that all personal care be performed for her. Cory sometimes requested time apart from Sara with Father, and Father testified that a split custody arrangement would be in Cory's best interest because Sara required and received so much more attention due to her medical condition. The split custody arrangement does not sever all family ties, in that there are many occasions where each parent will have custody of both children. On these facts, we find that the trial court was justified in separating the parties' minor children. Point denied.

■ In her second point, Mother complains that the trial court erred in ordering Father to pay the parties' outstanding marital debts, without identifying those debts as to either creditor or amount. Mother maintains that we must reverse and remand with instructions for the trial court to specifically identify the debts that Father has been ordered to pay, as they are unascertainable from the court's judgment. We disagree.

Formerly, trial courts were not statutorily obligated to allocate marital debts, since debts incurred during marriage were not "marital property." *Nichols,* 14 S.W.3d at 635 n. 2 (*citing Vehlewald v. Vehlewald,* 853 S.W.2d 944, 950 (Mo.App. 1993)). In 1998, however, the legislature amended section 452.330 to expressly require trial courts to divide not only marital property, but also marital debt. Section 452.330.1 RSMo (Cum.Supp.1999); *Nichols,* 14 S.W.3d at 635 n. 2. In relevant part, section 452.330.1 now provides: "In a proceeding for dissolution of the marriage ... the court ... shall divide the marital property and marital debts in such proportions

as the court deems just after considering all relevant factors...."

■ Although section 452.330 does not provide any guidance as to what constitutes marital debt, it has been held that marital debt is debt incurred during marriage or in contemplation of marriage. *In re Marriage of Thomas,* 21 S.W.3d 168, 177 (Mo.App.2000); *Wright v. Wright,* 1 S.W.3d 52, 60 (Mo.App.1999).

■ In dividing marital debt, the trial court is vested with broad discretion in determining how and in what manner the debts should be divided, and this court will not disturb its division absent a clear showing of an abuse of discretion. *Wright,* 1 S.W.3d at 60 (citations omitted). An abuse of discretion occurs when a trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. There is no abuse of discretion if reasonable persons could differ about the propriety of the trial court's decision." *Id.* The trial court possesses the authority to distribute marital debts in the sense that one spouse may be assigned the primary duty to pay off the debt and hold the other spouse harmless on the same. *Id.* The fact that one spouse did not control or actively participate in the decision to incur a debt does not preclude its allocation to that spouse where it is determined to be a marital debt. *Id.*

■ We acknowledge that a judgment for money must ordinarily specify with certainty the amount for which it is rendered, and an indefinite judgment that requires some external proof or another hearing for execution is void and unenforceable. *Hopkins v. Hopkins,* 626 S.W.2d 389, 392 (Mo.App.1981). Nevertheless, even if the judgment does not state the sum for which it is rendered, it is enforceable if the amount is ascertainable from the record. *Id.*

In this case, both parties submitted financial statements to the court, which were admitted into evidence. Father's

statement listed debts to Discover for $4,500; Visa for $4,500; and Briegel Baylord for $700. In her statement, Mother listed debts to Service Merchandise for $719; Best Buy for $2,946; Office Max for $560; Sears for $3,108; Linda and Terry Wilde for $6,000; Joseph Fuchs, III, for $7,000; Apia Health Care for $462; BJC Home Health Care for $259; Olsten Home Health Care for $25; St. John's Rehab Center for $150; and a Social Security repayment of $100.

During trial, Father testified that he would pay the debts listed on his financial statement to Discover, Visa, and Briegel Baylord. Mother testified that she would assume the debts to Office Max, Sears, and St. John's Rehab Center, and indicated that she was paying the social security debt in the form of monthly withholdings from her social security check.

In its judgment, the trial court specifically ordered Father to pay Mother's debt to Best Buy for a personal computer, and ordered Father and Mother to each pay one-half of the children's uncovered medical expenses which, testimony revealed, consisted of the debts to Apia, BJC, and Olsten. As to the remaining debts to Service Merchandise, Linda and Terry Wilde, and Joseph Fuchs, III, the court ordered Father to "pay the outstanding current marital debt and hold [Mother] harmless." The parties conceded during oral argument that the debts were incurred during the marriage, thus they were "marital debts" that the court could allocate in its discretion. In light of the foregoing, we find that these debts are ascertainable from the record and, as such, the trial court did not err by failing to enumerate them in its judgment. Point denied.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, Jr., P.J., and RICHARD B. TEITELMAN, J., concur.