

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| JOY JANELLE MCVEAN, | ) | No. ED112557 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 21SL-DR04042 |
| | ) | |
| ANTHONY DAVID MCVEAN, | ) | Honorable Amanda B. McNelley |
| | ) | |
| Appellant. | ) | Filed: June 27, 2025 |

Before Lisa P. Page, P.J., Rebeca Navarro-McKelvey, J., and Virginia W. Lay, J.

Anthony David McVean (Husband) appeals from the trial court's judgment of dissolution of his marriage to Joy Janelle McVean (Wife), which divided property and debts, and ordered Husband to pay maintenance, child support, and attorney's fees.

## BACKGROUND

Husband and Wife were married on May 20, 2000. The parties separated in April 2021 shortly after Husband withdrew $200,000 of marital property from his 401(k) to quit his management career with McDonald's to open a restaurant with his friends but without Wife's knowledge or consent. There were two children born of the marriage. The oldest is emancipated and the younger son has special needs such that he cannot function independently or support himself. Wife filed a petition for dissolution on August 27, 2021. At trial on July 10, 2023, neither party requested findings of fact or conclusions of law. In fact, upon the court's inquiry, both parties affirmed they were not seeking them.

At trial, Husband acknowledged he did not consult with Wife before he voluntarily quit his twenty-eight-year career with McDonald's, giving up health insurance, vacation, 401(k) benefits, and a salary that provided for his family. He contemporaneously withdrew $200,000 in marital assets from his McDonald's 401(k), again without Wife's knowledge or consent, to become self-employed. Husband claimed he did so unilaterally because he knew Wife would not agree and he "had to get out of McDonald's." He justified his decision to leave McDonald's because he preferred to work similar long hours for himself, rather than a corporation.

Husband invested $140,000 of the $200,000 in marital assets into Old Town Smokehouse, where he holds a 33 percent ownership interest with his friends, a married couple.[1] He claimed his partners have paid him half of the investment, about $70,000, but that money went into a business account reserve. Husband rolled the balance of the marital 401(k) into a business IRA in Husband's name and named his partner's wife – not *his* Wife – as the beneficiary. At trial, $57,186 remained in the IRA and the business still owed Husband $94,000.

The evidence showed Husband's 2019 gross income was $72,662, and his 2020 gross income was $68,713. At trial, he did not provide tax information for 2021, but testified his income was $4,000 per month, or $48,000. For 2022, his Second Amended Statement of Income and Expenses reported his gross monthly income was $3,000, but he testified at trial that his net income was $2,000 per month from self-employment.

Wife's evidence showed Husband's spending on several trips with his friends, as well as his use of significant marital funds at casinos while the divorce was pending. Wife testified that Husband did not consult her prior to quitting his job, withdrawing $200,000 in marital assets from his 401(k) and starting a new business with his friends.

---

[1] He said his partners own 67 percent of the business, with the husband owning 33 percent and the wife owning 34 percent.

Judgment was entered on September 25, 2023. The court awarded the parties joint legal custody with sole physical custody to Wife and visitation to Husband. The court considered the Section 452.330 RSMo (2016)[2] relevant factors with respect to the parties' marital property and debt in dividing their property. The court then determined the respective gross and net income of each party to calculate maintenance and Form 14 child support.

In its judgment, the court found Husband had a greater earning capacity and the means to replace his portfolio of assets while Wife did not. Husband was the primary income producer of the family while Wife was the primary caretaker of the children, especially their special needs son. The court concluded that a just, fair, equitable, and conscionable distribution of marital property was fifty percent to each Wife and Husband. In dividing the McDonald's 401(k) the court ordered "[f]irst $100,000 to Wife, then divide equally" for her share of the $200,000 Husband withdrew without her consent during the marriage. The remaining property and debt were divided between the parties resulting in a division of 51 percent to Wife and 49 percent to Husband.

The court found Wife worked part time with the Rockwood School District earning approximately $1,321 per month in gross income and calculated her net income as $1,042. In calculating maintenance, her reasonable expenses were $4,395, leaving her with a monthly deficit of $3,353. The court imputed Husband's gross annual income as $70,688, ($5,891 per month) or a net income of $5,327. Even though Husband testified his actual expenses were $760 per month, the court imputed his reasonable monthly expenses as $4,780 ($385 more than Wife's actual expenses), resulting in a surplus of $547. The court ordered Husband to pay Wife $1,000

---

[2] All further statutory references are to RSMo (2016).

per month in maintenance, leaving him with a monthly deficit of $453, and reducing Wife's deficit to $2,353.

The court rejected both parties' Form 14 and calculated its own, applying the same gross income it used to determine the net income for maintenance which resulted in a child support obligation of $699 per month. This appeal follows.

## DISCUSSION

Husband raises three points on appeal. In his first point, he alleges the trial court erred in imputing $5,891 per month gross and $5,327 per month in net income to him because there was no substantial evidence to support a ruling that he was capable of earning that amount. Husband argues he had ceased working for McDonald's prior to the parties having filed for the dissolution of marriage and there was no evidence that he was able to obtain his previous job or earn the same amount of money at the time of trial. He claims he was working full time and there were no findings or evidence to suggest he was underemployed or seeking to evade parental responsibilities by changing employment.

In his second point, Husband alleges the trial court erred in ordering him to pay awards of $1,000 per month in maintenance and $699 per month in child support to Wife because, even assuming, *arguendo*, that Husband made the income the court imputed to him, he still had no ability to pay the awards of maintenance and child support while meeting his own reasonable needs, which is arbitrary and unreasonable and constitutes an abuse of discretion.

In his third and final point, Husband alleges the trial court erred in entering a significantly disproportionate division of property because there was no substantial evidence to support such a division in that the court explicitly found that a fifty/fifty division of property and debt was "fair,

4

just and equitable" but then entered a division of property that was internally inconsistent with its own conclusions of law.

<em>Standard of Review</em>

When reviewing a trial court's decision from a court-tried case, we affirm the judgment of the trial court unless one of the following circumstances exist: (1) no substantial evidence supports the judgment; (2) the judgment is against the weight of the evidence; (3) the judgment erroneously declares the law; or (4) the judgment erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Substantial evidence is evidence that has some probative force on each fact that is necessary to support the trial court's judgment. *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014) (citing *In re K.A.W.,* 133 S.W.3d 1, 9 (Mo. banc 2004)). Probative force means the evidence has any tendency to make a material fact more or less likely. *Id.* at 199-200 (citing *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993)). When reviewing whether the trial court's judgment is supported by substantial evidence, we view the evidence in the light most favorable to the judgment and defer to the trial court's credibility determinations. *Id.* at 200 (citing *In re J.A.R.,* 426 S.W.3d 624, 626, 631–32 & n.14 (Mo. banc 2014)). Trial courts are free to believe any, all, or none of the evidence presented at trial. *Id.* (citing *In re J.A.R.,* 426 S.W.3d at 627).

The trial court is vested with broad discretion in awarding both maintenance and child support. *Dickerson v. Dickerson*, 580 S.W.3d 98, 103 (Mo. App. E.D. 2019). We reverse only upon finding an abuse of discretion. *Id.*; *Steffens v. Steffens*, 773 S.W.2d 875, 876 (Mo. App. E.D. 1989). Such awards shall not be disturbed unless the evidence is "palpably insufficient" to support them, and an appellate court will not substitute its judgment for that of the trial court.

5

*Steffens*, 773 S.W.2d at 876. (citing *Hogrebe v. Hogrebe,* 727 S.W.2d 193, 195[1] (Mo. App. 1987)). The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Dickerson*, 580 S.W.3d at 103. We defer to the trial court even if the evidence could support a different conclusion. *Id.* If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion. *Id.* at 103-04.

### Point I – Imputing Income

In his first point, Husband alleges the trial court erred in imputing $5,327 per month in income to him because there was no substantial evidence to support a ruling that he was capable of earning that amount. He argues he had ceased working for McDonald's before the parties had filed for dissolution, there was no evidence he was able to obtain his previous job or earn the same amount of money, at the time of trial he was working full time, and there were no findings or evidence to suggest he was underemployed or evading parental responsibilities by changing employment.

A trial court has discretion to impute income to an underemployed parent. *Rivers v. Rivers,* 21 S.W.3d 117, 124 (Mo. App. W.D. 2000) (internal citation omitted). In proper circumstances, a court may impute income of what that parent could earn by use of his best efforts to obtain employment suitable to his capabilities. *Thomas v. Thomas,* 989 S.W.2d 629, 635 (Mo. App. W.D. 1999) (internal quotations omitted). "[C]ourts may impute a higher income to a noncustodial parent than he or she actually earns, if the evidence shows that the parent has the capacity to earn more but *voluntarily* refuses to do so." *Walker v. Walker*, 936 S.W.2d 244, 247 (Mo. App. S.D. 1996) (internal citations omitted) (emphasis added); *Robertson v. Nelson*, 502 S.W.3d 627, 642 (Mo. App. W.D. 2016).

6

"What constitutes the appropriate circumstances to impute income is fact-dependent and must be determined case-by-case." *Payne v. Payne*, 206 S.W.3d 379, 385 (Mo. App. E.D. 2006). When income is imputed, the issue is whether the evidence supports that amount. *Monnig v. Monnig*, 53 S.W.3d 241, 245 (Mo. App. W.D. 2001) (quoting *Honderick v. Honderick,* 984 S.W.2d 205, 212 (Mo. App. W.D. 1999)). In determining a parent's ability to pay child support, a court may consider past, present, and anticipated earning capacity. *Thill v. Thill,* 26 S.W.3d 199, 207 (Mo. App. W.D. 2000). Evidence of spending is also substantial evidence of a parent's earning potential. *Heck v. Heck*, 318 S.W.3d 760, 765 (Mo. App. W.D. 2010) (father's testimony about his intent to pay off debt indicated his intent to earn income).

We begin with Husband's assertion the record does not support the imputation of income to him because he had ceased working for McDonald's prior to the parties having filed for the dissolution of marriage. This complaint is without merit because his personal decisions to quit his job and withdraw $200,000 in marital 401(k) funds were unsurprisingly contemporaneous with the time he and Wife separated, even though Wife did not file for divorce until August. This claim is simply refuted by the record.

Husband complains there was no evidence that he was able to obtain his previous job or earn the same amount of money, he was working full time at the time of trial, and there were no findings or evidence to suggest he was underemployed or seeking to evade parental responsibilities by changing employment. Finally, Husband argues the "only reasoning provided by the trial court as to why it was electing to impute income to Husband was due to '[Husband's] voluntary termination from McDonald's to start his own restaurant.'"

Husband elected to leave McDonalds after a long career without exploring other employment opportunities other than becoming self-employed, especially those that might pay

7

him more or provide benefits. He gave up health insurance, vacation, 401(k) benefits from McDonalds, and a salary that provided for his family. Husband's major complaint about working at McDonalds was the hours. However, he continues to work the same number of hours at his new business because he prefers to work for himself.

The trial court is not required to specifically state it found Husband underemployed, as neither party requested findings of fact or conclusions of law, but it is clear the evidence supports an imputation of income to him. We are unmoved by Husband's personal preference to work for himself as a legal basis upon which to determine his income in calculating his maintenance and child support obligations. Based upon this evidence, we find the court was well within its discretion to consider Husband's past, present, and anticipated earning capacity to determine Husband's ability to pay support. *See Thill*, 26 S.W.3d at 207. In light of Husband's substantial history in the food industry and his unilateral decision not to make any effort to find another job with a higher salary or benefits so he could work for himself, we find it was reasonable for the court to impute income to Husband by averaging his 2019 and 2020 salaries.

The trial court did not abuse its discretion in imputing income to Husband based on his obvious underemployment, which he chose without consulting Wife, even though he was the primary income producer for his family, especially their special needs son. Point one is denied.

### Point II – Maintenance and Child Support

In his second point, Husband alleges the trial court erred in ordering him to pay awards of $1,000 per month in maintenance and $699 per month in child support to Wife because, even assuming, *arguendo*, that Husband made the income the court imputed to him, he still had no ability to pay the awards of maintenance and child support while meeting his own reasonable needs. Husband contends the court's decision was arbitrary and unreasonable and constitutes an

8

abuse of discretion. We disagree because the court properly calculated each in accord with Missouri statutes and Supreme Court rules.

In Missouri, awards of spousal maintenance and child support are two distinctly separate concepts, and maintenance does not include child support. *Atchley v. Atchley,* 334 S.W.3d 709, 714 (Mo. App. E.D. 2011) (citing *Nichols v. Nichols*, 14 S.W.3d 630, 637 (Mo. App. E.D. 2000)). Maintenance payments must first be determined and are limited to the needs of the recipient. *Id.* Section 452.335 RSMo (2016)[3] governing spousal maintenance excludes amounts spent for the direct care and support of a child in calculating maintenance. *Id.*; *Schubert v. Schubert*, 366 S.W.3d 55, 64 (Mo. App. E.D. 2012).

The trial court may award maintenance only if it first finds the party seeking it lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs, and is unable to support themselves through appropriate employment. Section 452.335.1; *D.K.H. v. L.R.G.*, 102 S.W.3d 93, 103 (Mo. App. W.D. 2003). If the trial court determines the party seeking maintenance cannot meet their reasonable needs, the trial court must apply the factors of Section 452.335.2 "so as to balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay." *Manning v. Manning,* 292 S.W.3d 459, 466 (Mo. App. E.D. 2009) (*quoting Garrison v. Garrison,* 255 S.W.3d 37, 41 (Mo. App. W.D. 2008)). Importantly, the statute gives the trial court broad discretion in applying these factors. *Hammer v. Hammer*, 139 S.W.3d 239, 241 (Mo. App. W.D. 2004). "[T]he court is not required [in the absence of a request for specific findings] to announce for the record the significance of and the weight that it gave to each factor in determining its award of maintenance." *Id.* (internal quotations omitted).

---

[3] All further statutory references are to RSMo (2016).

"A maintenance award is aimed at closing the gap between the income of the spouse seeking maintenance and that spouse's monthly expenses." *In re Marriage of Neu,* 167 S.W.3d 791, 795 (Mo. App. E.D. 2005) (citing *N.M.O. v. D.P.O.,* 115 S.W.3d 854, 857 (Mo. App. E.D. 2003)). Such an award must be supported by substantial evidence. *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo. App. W.D. 1996) (citing *Woolridge v. Woolridge,* 915 S.W.2d 372, 375 (Mo. App. W.D. 1996), and *Murphy*, 536 S.W.2d at 32); *In re Marriage of Randle*, 762 S.W.2d 494, 495 (Mo. App. W.D. 1988). If it is supported by substantial evidence, we will not find an abuse of discretion. *In re Marriage of Ross*, 231 S.W.3d 877, 886 (Mo. App. S.D. 2007).

Husband does not dispute the trial court's conclusion regarding the threshold issue that Wife was unable to provide for her reasonable needs; thus, we need not discuss it further. Next, the court made findings on factors set forth in Section 452.335.2, and premised the award of maintenance on (i) Wife's current income; (ii) the amount of financial support provided by Husband in order to meet Wife's reasonable needs during the pendency of this matter; (iii) Husband's current income; (iv) the ages of both parties; (v) the marital property awarded to Husband and Wife; (vi) Husband and Wife's debt; (vii) Husband's reasonable needs; (viii) the conduct of the parties during the marriage; (ix) the 23-year duration of the parties' marriage; and (x) the amount of Husband's net income and his ability to pay maintenance and continue to meet his own reasonable needs. Here, the court did consider Husband's imputed net income and reasonable needs for purposes of calculating maintenance, but it was one of several, not the only factor, weighed by the court.

Next, the court properly considered Wife's reasonable monthly expenses as $4,395 while she earned $1,043 net income per month working limited hours part time at the school district, while caring for her child with special needs; thus, she met her statutory threshold for an award

10

of maintenance with a shortfall of "roughly $3,353.00 per month." Despite this shortfall, Wife only sought $1,500 per month in maintenance. The court then calculated Husband's net monthly income as $5,327. After generously imputing his reasonable monthly expenses as $4,780 (even though his actual expenses were $760), the court ordered him to pay Wife $1,000 per month in maintenance, reducing Wife's deficit to $2,353 while Husband is $454 short meeting his reasonable needs.

In addition to this significant disparity between the parties' ability to meet their reasonable needs, the court considered Husband's conduct. While not characterizing his behavior as misconduct, the court was well within its discretion to consider his withdrawal of $200,000 from his McDonalds 401(k) without consulting with Wife to open his new business, taking vacations, and spending large sums of marital funds at casinos. Husband had access to sizeable amounts of money for discretionary spending while eliminating many of his expenses because he was living with his parents. *See Lindsey v. Lindsey,* 336 S.W.3d 487, 498-99 (Mo. App. E.D. 2011) (court may reduce stated reasonable expenses based on parties' testimony); *Valentine v. Valentine*, 400 S.W.3d 14, 23 (Mo. App. E.D. 2013). The trial court properly considered one element of Husband's ability to pay among the other factors set forth in Section 452.335.2 and did not abuse its discretion in ordering Husband to pay the award of maintenance based on his imputed income.

After calculating an award of maintenance to Wife, the trial court calculated child support as required by Section 452.340 and Rule 88.01, which requires a two-step process. *Wilkerson v. Wilkerson*, 707 S.W.3d 79, 89 (Mo. App. S.D. 2025). The court must first calculate the presumed child support amount according to Rule 88.01 using Form 14, which creates a "rebuttable presumption that the presumed child support amount is the correct amount of child

11

support." *Girgis v. Girgis*, 676 S.W.3d 510, 513 (Mo. App. E.D. 2023) (quoting *Hark v. Hark*, 567 S.W.3d 671, 676 (Mo. App. E.D. 2019)); *see also Woolridge,* 915 S.W.2d 372 at 378 ("The use of Form 14 in calculating child support is mandatory."). In making this determination, "the trial court can either accept one of the parties' Form 14 calculations or reject both parties' calculations and prepare its own Form 14 calculation." *Roberts v. Roberts,* 391 S.W.3d 921, 922 (Mo. App. W.D. 2013). "The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record, which we recommend as the most efficient and surest way of preserving the record, or by articulating on the record how it calculated [the] amount." *Woolridge,* 915 S.W.2d at 382. The Form 14 is calculated based upon the respective gross income of each parent. *Tolu v. Stientjes*, 703 S.W.3d 619, 639 (Mo. App. E.D. 2024). Next, the trial court must determine if the presumed child support amount is unjust or inappropriate based on the Form 14 directions. *Thomas v. Moore*, 410 S.W.3d 748, 758 (Mo. App. W.D. 2013).

Here, the court calculated its own Form 14 by finding Wife's monthly gross income as $1,321 and Husband's as $5,891. The court then added $1,000 in maintenance to Wife's income for a total of $2,321 and subtracted Husband's maintenance obligation to find his income at $4,891. The trial court apportioned Wife with 32.2 percent of their combined income and Husband with 67.8 percent. After determining the basic child support amount was $1,031, the trial court then found the presumed child support amount was $699.

The trial court "carefully reviewed all relevant factors bearing on the issue of child support, health insurance coverage, and the payment of health expenses and extracurricular expenses for the minor child" and did not rebut the presumed Form 14 child support of $699 per month as unjust and inappropriate.

12

Husband's allegedly unmet reasonable expenses do not demonstrate an abuse of discretion, or a lack of careful consideration, in finding the $699 presumed Form 14 child support amount was just and appropriate in providing for his child with special needs.

Husband's second point on appeal is denied.

**Point III – Disproportionate Division of Property**

In his third and final point, Husband alleges the trial court erred in entering a significantly disproportionate division of property because there was no substantial evidence to support it in that the court explicitly found that a fifty/fifty division of property and debt was "fair, just and equitable" but then entered a division of property that was internally inconsistent with its own conclusions of law. Husband claims Wife was awarded $117,325 more in net marital assets which resulted in 58-42 percent division in favor of Wife. He claims his analysis on appeal is further complicated because the court should not have awarded Wife any of his business IRA because it was funded by his half of McDonald's 401(k) that he withdrew during the marriage. We disagree and find the record does not support his claim.

The trial court has "great flexibility and discretion in its division of marital property" pursuant to Section 452.330. *Ballard v. Ballard*, 77 S.W.3d 112, 116 (Mo. App. W.D. 2002). This court presumes the trial court's division is correct, and the spouse challenging the division bears the burden of overcoming this presumption. *Id.* (citing *Rivers,* 21 S.W.3d at 123). "'The division of marital property [pursuant to Section 452.330] need not be equal, but must only be fair and equitable given the circumstances of the case.'" *Shepard v. Shepard,* 47 S.W.3d 412, 417 (Mo. App. S.D. 2001) (quoting *Nelson v. Nelson,* 25 S.W.3d 511, 517 (Mo. App. W.D. 2000)).

13

Husband complains Wife received $433,495 of the net value of the marital estate compared to his $316,170. This is incorrect because the court ordered the "[f]irst $100,000, then divide equally" in its division of the 401(k). Instead, he included the $100,000 in her share of marital assets but failed to account for his share of the $200,000 he withdrew from the 401(k) marital funds in his calculation. In correcting his math, we find Wife was awarded $333,495 or 51 percent of the marital estate's net value. *See Shepard*, 47 S.W.3d at 417 (division of marital property need not be equal, but must be fair and equitable based on the circumstances of the case).

Husband further has nothing to complain about on appeal with regard to Wife's award of half of his business 401(k). First, it remained a marital asset and as such, was subject to division within the broad discretion of the trial court. *Ballard*, 77 S.W.3d at 116. His efforts to put the funds into the business IRA and name his partner's wife as the beneficiary did not magically convert it into his separate property. Second, the court awarded him 100 percent of this interest in Old Town Smokehouse, LLC, incorporated and funded with marital assets during the marriage. Clearly his business had a marital component that was not awarded to Wife. Finally, Husband has enjoyed exclusive use and control of Wife's marital share of the 401(k) funds since he withdrew them without her knowledge.

In conclusion, we need not speculate on the court's exercise of its discretion in dividing marital assets as suggested in Husband's point on appeal because he did not request findings under Rule 73.01(c). We therefore deem all fact issues "to have been resolved by the trial court in accordance with its award." *In re Marriage of Murphy*, 71 S.W.3d 202, 206 (Mo. App. S.D. 2002).

Husband's third point is denied.

14

**CONCLUSION**

In conclusion, we find the trial court carefully considered all the issues necessary in preparing a judgment of dissolution in the proper order of dividing property and debt, imputing and finding gross and net income for each party, determining maintenance, and finally calculating Form 14 child support. The judgment of the trial court is affirmed.

_____
Lisa P. Page, Presiding Judge

Rebeca Navarro-McKelvey, J., and
Virginia W. Lay, J., concur.