**In re the MARRIAGE OF Nolen Dale REESE and Dessa Maurine Reese.**

**Nolen Dale Reese, Petitioner–Respondent,**

**v.**

**Dessa Maurine Reese, Respondent–Appellant.**

**No. 25877.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 23, 2005.

Frederick W. Martin, III, West Plains, MO, for Appellant.

David G. Neal, Eminence, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Dessa Maurine Reese ("Wife") appeals from a judgment dissolving her marriage to Nolen Dale Reese ("Husband") and presents four points for decision. Wife's first three points challenge the division of marital property. She contends the trial court erred by awarding Husband the following "credits" from the proceeds of the sale of the marital real estate: (1) an amount equal to value of Wife's nonmarital teacher retirement account; (2) an amount equal to Wife's share of the marital debt allocated to her by the judgment; and (3) an amount equal to the mortgage, line-of-credit, insurance and tax payments on the marital real estate paid by Husband from September 1, 2002, until the date the property is sold. In Wife's final point, she contends the trial court erred in ordering Husband to pay retroactive child support for only one year, instead of three. We conclude the trial court erred in dividing the marital property. The court acted

within its discretion, however, in awarding Wife retroactive child support for only one year. Therefore, we affirm in part, reverse in part and remand the case with directions.

## I. Facts

Husband and Wife were married on August 28, 1974. They separated nearly twenty-six years later on August 9, 2000. They had two children: Joshua Reese ("Son"), who was born on April 3, 1981; and Amanda Reese ("Daughter"), who was born on February 28, 1985. Husband filed a petition for dissolution on October 16, 2000. Wife's cross-petition was filed on November 15, 2000. Each parent sought physical custody of both children and an award of child support from the other, as well as division of the parties' marital property. The case was tried on May 30, 2002. The following is a resume of the trial testimony relevant to the issues on appeal.

Husband was employed at a music store in West Plains, Missouri, where he earned approximately $16,000 per year. He had worked at this job for the last five years and planned to stay with the store indefinitely. Since Husband only had a high-school education and never attended college or received any vocational training, he was at his maximum earning potential. Through Husband's various jobs during the marriage, he had accumulated three individual retirement accounts worth $3,500.

Wife was employed as a teacher at Fairview School in West Plains, Missouri. She had been a teacher for 18 years. In 2001, she earned approximately $37,000. Through Wife's employment as a teacher, she had built up a retirement account valued at $27,860.90. She obtained her teaching degree during the marriage with financial assistance from Husband's parents, who paid for the portion of Wife's tuition, books and transportation expenses not covered by grants and student loans. Husband offered no testimony on the dollar value of his parents' contribution to Wife's education. She testified that Husband's parents contributed $1,500 toward the cost of her education. While she was going to school, however, she worked part time as a babysitter. Wife also worked part time and then full time at the extension office. In addition, Wife assisted Husband's parents with the work on their farm by herding cattle, brush-hogging and operating farm equipment.

About two years after the parties married, they moved into a house in Alton, Missouri, owned by Husband's parents. Husband and Wife lived in this house rent-free for the next 13 years.[1] In March 1989, Husband's parents deeded the house and 20 acres to Husband and Wife at no cost to them. There was no testimony introduced concerning the value of the real estate at that time. From 1989 to 2000, Husband's parents also paid the real-estate taxes on the property six or seven times. As of the date of trial, Husband's expert appraised the value of the house and land at $58,500.

When Husband and Wife became the owners of the property, they borrowed $24,000 for home improvements from Farm Credit Services. This debt had been reduced to approximately $9,000 at the time the parties separated in August 2000. During the 11–year period of time over which the mortgage debt was reduced, Wife contributed substantially more to the household income than Husband.

---

1. The house was located on a 320–acre tract purchased by Husband's parents in 1976. The 320 acres adjoined other land already owned by Husband's parents.

The Farm Credit Services debt was secured by a mortgage on the property. The monthly mortgage payments were $188.66 per month. Insurance on the property cost an additional $56.74 per month. The real estate also served as security for a line-of-credit the parties had at the Bank of Alton. The parties made only one annual payment on this debt in June of each year. In 2001, they just paid the accrued interest. Husband and Wife each contributed one-half of the amount due. As of May 2002, the parties owed approximately $1,301 on the Bank of Alton debt.

When the parties separated, Wife and Daughter moved out of the marital home and into a rented house in Alton.[2] Husband moved into his parents' home. The marital home remained vacant until May 2001, when Husband's nephew, Stacey Haney, and his wife moved into the residence. Husband allowed the Haneys to live there rent-free in exchange for maintaining the property. Husband moved in with the Haneys and lived with them until Mr. Haney was called up for military duty. Thereafter, Husband moved back into his parents' home. From the date of separation in August 2000, Husband paid the monthly mortgage and insurance payments on the marital home without any assistance from Wife. By the date of trial, these payments totaled approximately $5,150.

During the marriage, Wife was the person who principally managed the couples' finances, bank account and credit cards. Husband had not used a credit card for 10–15 years prior to the parties' separation. Credit-card debt was incurred to pay for household expenses such as cloth-ing for the children, Christmas gifts, vehicle repairs and maintenance, groceries, and to cover shortfalls in the family checking account. At one point, the parties' credit-card debt totaled $15,400. They reduced that debt somewhat after undergoing credit counseling. In August 2000, their total credit-card debt was about $12,000. After separation, Husband continued making payments to Consumer Credit Counseling which were applied to the parties' joint First USA Bank and Citibank Visa credit-card accounts. Husband paid monthly payments of $198 until November 2001, at which time the payments increased to $209 per month. By the date of trial, these payments totaled approximately $4,200. As of May 2002, the balances due on these two accounts totaled $8,964.[3]

Although Wife paid nothing toward the debt on these credit cards, she did make approximately $1,500 in payments on two of the parties' other joint credit cards during the period of separation. She also paid all of the expenses of raising the couple's two children during that time. Husband contributed nothing to the support of his children after the parties separated in August 2000.

On August 19, 2002, the trial court filed a memorandum listing its decisions on the principal issues in the case:

1. The son is emancipated.

2. Mother should have custody of the minor child and father should have usual visitation.

3. The house and acreage is worth $58,500.00.

4. The house should be sold. The proceeds should be applied to the mort-

---

2. Son was attending college at the time and lived off-campus, so he did not reside with either Husband or Wife.

3. The remaining balance on the First USA Bank was $5,369. The remaining balance on the Citibank Visa was $3,595.

gage. After the mortgage is satisfied Mr. Reese should receive an amount equal to Mrs. Reese's school teachers' retirement fund. If anything remains after these deductions are made it can be equally divided.

5. The debts should be divided based on the ratio of the earning capacity of each party as shown by the tax return.

6. Mr. Reese should pay child support.

7. Personal property should be divided pursuant to testimony of the parties.

Over a year later, the trial court entered its judgment dissolving the parties' marriage as of August 22, 2003. As required by § 452.330.1, the court set apart to each spouse his or her nonmarital property, which appears to be of nominal value except for Wife's school teacher retirement account.[4] The judgment acknowledges that this account, worth $27,860.90, is Wife's sole and separate property.

The marital property included tangible personal property, Husband's retirement accounts and the parties' real estate. The trial court divided the personal property as follows: (1) Husband was awarded property worth approximately $11,750, comprised of a vehicle, household goods and three individual retirement accounts; and (2) Wife was awarded property worth approximately $6,000, comprised of a vehicle and household goods. The court valued the real estate at $58,500 and found that it was encumbered by debts of $5,584 and $1,301 owed to Farm Credit Services and the Bank of Alton, respectively. The trial court divided the marital real estate in the following provision of the judgment:

5. The parties may agree as between them for one to purchase the other's interest in the real estate using the value set by the Court as the fair market value for the transaction. Should the parties be unable to make such settlement within thirty days of this judgment, the property shall be sold at public auction. The expense of the sale, commissions, abstracting and title insurance fees, and other usual fees and expenses shall be deducted from the gross proceeds of the sale.

6. Upon the sale of the real estate the remaining mortgage to Farm Credit shall be paid as will [sic] as the line-of-credit to the Bank of Alton and secured by the real estate. The remaining proceeds shall be split between the parties after the following credits are given to [Husband]:

a) $27,860.90 for [Wife's] Teacher's Retirement;

b) $6,274.80 representing 70% of the marital indebtedness for which [Wife] was Ordered to pay;

c) Credits for all payments made on the mortgage and line-of-credit paid by him since September 1, 2002; and

d) Credit for all insurance payments and real property taxes paid by him since September 1, 2002.

Subsections b-d of this provision differ from the trial judge's initial determination in his August 16, 2002 memorandum by giving Husband three new "credits" not mentioned in the memorandum. In the judgment, the court listed the following factors which it considered in dividing the marital property:

b) The Court has found that during the marriage of the parties the family of the [Husband] has contributed substantially to the acquisition of the real estate, including the payment of numerous house payments, insurance

4. All references to statutes are to RSMo (2000).

payments, taxes and the providing of essentials for the marriage;

c) The [Wife] is employed at a lucrative wage making in excess of $30,000.00 per year;

d) The [Wife] did during the marriage obtain an education and is completing her Masters all of which was acquired during the marriage with significant contributions from the family of the [Husband];

e) The [Husband] has only a high school education and is employed at the rate of approximately $8.00 per hour and has no prospects in the near future of obtaining employment at a lucrative wage rate;

f) During the marriage the [Wife] has acquired a substantial teacher's retirement which is separate in nature and as of the date of valuation had a value of $27,860.90; [and]

g) The [Husband] does not have a retirement account[.]

This last statement is obviously in error because the trial court awarded Husband three individual retirement accounts worth $3,500.

The trial court also allocated the martial debt between the parties in relation to their relative incomes. The trial court ordered Wife to pay 70% of the $8,964 marital credit-card debt, 70% of the amount owed on the automobile awarded to Husband and all of the debt owed on the vehicle awarded to her. Her debts totaled approximately $11,000. Husband was ordered to pay 30% of the $8,964 marital credit-card debt and 30% of the amount owed on the vehicle awarded to him. His debts totaled approximately $4,700.

By our calculation, the net marital estate was worth about $53,500. After subtracting the amount of marital debt allocated to each party from the gross value of the marital assets they were awarded, the trial court's judgment gave Husband 96% and Wife 4% of the net marital assets. These calculations, however, omit any consideration of the costs of selling the real estate because the sale had not occurred at the time judgment was entered. Since expenses such as commissions, abstract fees, and title insurance fees must be deducted from the gross proceeds, Wife might receive nothing at all from the marital assets once these deductions are made.

The court also ordered Husband to pay $238 per month in child support retroactive to September 1, 2002. The trial court stated that it considered two factors in selecting the retroactive date for commencement of child support:

12. The Court has in selecting child support commencement date of September 1, 2002, taken into consideration that the [Husband] has continued to make the monthly payment on the marital residence of $188.00 per month plus insurance payments of approximately $50.00 on the residence although neither party has resided in the home and said mortgage and insurance payments have been a benefit to both parties without either party receiving more benefit than the other and said amounts are relatively identical to any support obligation that would have been due and owing prior to September 1, 2002.

13. Further, the Court has taken into consideration that during the pendency of the dissolution of marriage action the [Husband] has made payments on behalf of the parties to Consumer Credit Counseling for marital debt in the approximate amount of $200.00 which

was and for the benefit of both parties.

Wife appealed from the judgment and presents the four points of error discussed above.

## II.  Standard of Review

■ In this court-tried case, our review is governed by Rule 84.13(d).[5] *Hall v. Hall,* 53 S.W.3d 214, 217 (Mo.App.2001). The judgment will be affirmed unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence or the judgment erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Marriage of Petersen,* 22 S.W.3d 760, 763 (Mo.App.2000).[6]

■ In Wife's appeal, she challenges the division of marital property and the effective date chosen for the commencement of her retroactive child support award. Within the confines of the law and the evidence, a trial court is required to divide marital property and award retroactive child support in the exercise of its sound discretion. *Abbott v. Perez,* 140 S.W.3d 283, 293 (Mo.App.2004); *In re Marriage of Baker,* 986 S.W.2d 950, 954 (Mo.App.1999). Thus, we review the trial court's disposition of these issues for compliance with *Murphy v. Carron* and for abuse of discretion. *Baker,* 986 S.W.2d at 957; *see C.A.V. v. S.L.D.,* 996 S.W.2d 777, 779 (Mo.App.1999). "An abuse of discretion occurs only if the decree is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration." *In re Marriage of Woodson,* 92 S.W.3d 780, 785 (Mo. banc 2003).

**5.**  All references to rules are to the Missouri Rules of Civil Procedure (2004).

**6.**  *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule

## III.  Discussion

■ In Wife's first point, she contends the trial court erred in dividing the marital property because the court gave Husband a "credit" of $27,860.90, which was to be deducted from the net proceeds of the sale of the marital real estate before Wife received anything. This "credit" exactly equaled the value of Wife's teacher retirement account, which the trial court acknowledged was her separate, nonmarital property. Wife argues the trial court abused its discretion by giving Husband this "credit" because it materially impacted the division of marital property. We agree.

■ The division of marital property is left to the sound discretion of the trial court, and its decision will be upheld unless an abuse of discretion is shown. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 64 (Mo. banc 1983); *In re Marriage of Michel,* 142 S.W.3d 912, 920 (Mo.App.2004). An appellate court will only interfere with the division "if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Nelson v. Nelson,* 25 S.W.3d 511, 516 (Mo. App.2000).

■ The division of property in a dissolution proceeding is governed by § 452.330. This statute requires a trial court to follow a two-step procedure: (1) the court must first set aside to each spouse his or her nonmarital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *Michel,* 142 S.W.3d at 920. In dividing the martial property, the trial

were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

court is required to consider "all relevant factors" including the following:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1.

The only significant nonmarital property belonging to either spouse was Wife's teacher retirement account. By statute, this account is nonmarital in nature and cannot be divided in a dissolution proceeding. § 169.572; *In re Marriage of Woodson*, 92 S.W.3d 780, 783 (Mo. banc 2003).[7] Instead, a trial court must assign a value to the account and then consider the value of this nonmarital asset as one factor, among many, used to divide the marital property. *Silcox v. Silcox*, 6 S.W.3d 899, 905 (Mo. banc 1999); *see Woodson*, 92 S.W.3d at 784. Only limited consideration, however, can be given to this factor. A trial court cannot consider the value of a nonmarital teacher retirement account "to such an extent that it has a substantial material impact on the overall division of marital property." *Id.* at 785.

Here, the net marital assets totaled $53,500. While the trial judge acknowledged that Wife's teacher retirement account was her sole and separate property, the court gave Husband a "credit" exactly equal to the value of this account from the proceeds of the sale of the marital real estate. The effect of this "credit" was to immediately award Husband over half of the net marital assets. Assuming the remainder of the sale proceeds were split equally between the parties, the division of the net marital property would have been grossly disproportionate with Husband receiving 87% and Wife receiving only 13% as a direct result of the credit.[8] In effect, the trial court treated Wife's teacher retirement account as though it were a marital asset by giving Husband a credit or an offset of equal value. This was a misapplication of the law and an abuse of discretion because the trial court's action substantially and materially impacted the division of marital property. *See Woodson*, 92 S.W.3d at 785; *Bohon v. Bohon*, 102 S.W.3d 107, 111 (Mo.App.2003); *DeMayo v. DeMayo*, 9 S.W.3d 736, 741 (Mo.App. 2000).

In *DeMayo*, the wife had a teacher retirement account worth $61,000. The net marital estate was valued at $120,400. The wife was awarded marital assets worth $16,042; the husband was awarded marital assets worth $104,358. Thus, the wife received about 13.5% of the marital property, and the husband received the remaining 86.5% of the marital assets.

---

**7.** In *Woodson*, the Supreme Court pointed out that the preferential treatment afforded teacher retirement accounts by the Legislature promotes two important goals: (1) it aids in attracting and retaining teachers to the profession; and (2) it reduces society's responsibility to support retired teachers. *Id.* at 784.

**8.** The trial court also erred, for reasons discussed in our analysis of Wife's second and third points on appeal, by granting Husband two other improper credits. These errors exacerbated the disproportionate division of the marital assets in Husband's favor.

The Western District of this Court reversed the trial court's disproportionate award of the bulk of the marital assets to the husband for reasons we find equally applicable to the case at bar:

Missouri case law allows the trial court to consider a teacher's retirement fund as a relevant factor under § 452.330; however, when its inclusion in the property distribution causes a material impact on the division of property, its consideration is erroneous. It is apparent the trial court not only took account of Leila's teacher's retirement fund in its division but in effect treated the fund as marital property. This had a substantial material impact on the amounts and manner of division of the property. As such, we find the trial court's division of the marital property erroneous requiring reversal of the judgment as to the division of marital property.

*DeMayo*, 9 S.W.3d at 741 (citations omitted).

In *Bohon*, the wife had a teacher retirement account worth $694,971. She was awarded between $85,615 and $105,195 in marital assets. Her husband was awarded between $397,881 and $414,491 in marital assets. Relying on *DeMayo*, the Western District reversed the trial court's division of marital property because it resulted from improper consideration of the value of wife's nonmarital teacher retirement account:

Although the trial court did not specifically divide Wife's teacher retirement fund, it apparently took account of Wife's teacher retirement account in its division of the martial property. "Missouri case law allows the trial court to consider a teacher's retirement fund as a relevant factor under section 452.330; however, when its inclusion in the property distribution causes a material impact on the division of property, its con-

sideration is erroneous." *DeMayo*, 9 S.W.3d at 741. The size of Wife's teacher retirement account coupled with the fact that she only received 17% to 21% of the marital assets suggests that the trial court effectively treated her retirement benefits as marital property.

*Bohon v. Bohon*, 102 S.W.3d 107, 111 (Mo. App.2003).

In *Woodson*, the trial court set aside to the wife her teacher retirement account valued at $193,693. She was awarded 40% of the marital assets worth $151,774. Her husband was awarded 60% of the marital assets worth $230,933. On appeal, the wife attacked the division of marital property. She argued that the trial court overemphasized her nonmarital teacher retirement account, which was equal in value to half of the net marital assets, when it divided the marital property. *Woodson*, 92 S.W.3d at 784. Citing *DeMayo*, the Supreme Court upheld this division of marital property for the following reason:

The trial court must consider the value of nonmarital property before equitably dividing the marital property. Even so, the trial court may not consider the nonmarital property to such an extent that it has a substantial material impact on the overall division of marital property. The trial court properly considered Wife's teacher retirement "a factor" in distributing the marital property. Husband received 60 percent of the net marital property, and Wife 40 percent. While not equal, this division neither violates *Murphy v. Carron*, nor is so one-sided as to be an abuse of discretion.

*Woodson*, 92 S.W.3d at 785 (citations omitted). Here, the disproportionate division of property far exceeds the 60/40 ratio which was upheld by the Supreme Court in *Woodson*.

Husband argues that the trial court's lopsided division of the marital assets can

be upheld based on the trial court's consideration of other permissible factors in § 452.330.1. In support of this argument, Husband points to the trial court's consideration of the following factors in dividing the marital assets: (1) Wife has greater earning power than Husband; (2) Husband's parents bought the marital real estate; and (3) Husband's parents contributed to Wife's education.

■■■ We begin by noting that, in dividing marital property, the trial court must follow the two major guiding principles inherent in § 452.330: (1) property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) property division should be utilized as a means of providing future support for an economically dependent spouse. *In re Marriage of Gibson,* 23 S.W.3d 686, 689–90 (Mo.App.2000). The division of marital property should be substantially equal unless one or more statutory or nonstatutory factors cause such a division to be unjust. *Hubbs v. Hubbs,* 870 S.W.2d 901, 907–08 (Mo.App. 1994).

■■■ The only statutory factor upon which Husband relies is the economic circumstances of the parties, based on the difference in their earning power.[9] While Husband earns considerably less than Wife, he is healthy and employed full time. He did not request maintenance from Wife. The parties were married 29 years, and Husband benefited from Wife's greater earning capacity for 18 of those years. Thus, Husband's lesser earning capacity alone is not a sufficient justification for the grossly disproportionate division of marital property in this case. *See Gibson,* 23 S.W.3d at 690–91 (ordering, on remand, a substantially equal division of marital property even though husband's earnings were three times that of wife).

■■■ Husband's other argument focuses on his parents' contributions to the couple by purchasing the marital real estate and helping pay for Wife's education. The list of five factors found in § 452.330.1 does not include this item, but the list is not exclusive. *In re Fuldner,* 41 S.W.3d 581, 594 (Mo.App.2001). A trial court is required to consider all relevant statutory and nonstatutory factors in dividing marital property. *Ballard v. Ballard,* 77 S.W.3d 112, 116 (Mo.App.2002).

In considering the contributions of Husband's parents to the acquisition of the martial real estate, we begin by pointing out that the house and land were given to both Husband and Wife. The real estate was jointly titled in both their names. Therefore, the property is presumed to be marital in nature even though it was originally purchased by Husband's parents. *See* § 452.330.3; *In re Marriage of Brewer,* 592 S.W.2d 529, 533 (Mo.App.1979); *Forsythe v. Forsythe,* 558 S.W.2d 675, 678 (Mo.App.1977). Husband did not attempt to overcome this presumption at trial. Instead, he argues that the trial court's disproportionate division is authorized by *In re Marriage of Hedrick,* 659 S.W.2d 352 (Mo.App.1983). We disagree.

In *Hedrick,* the only significant item of marital property was the couples' home, which was built on a lot donated by the

---

9. None of the other factors in § 452.330.1 would support an unequal division in Husband's favor. He does not claim to have made any significant contribution to the acquisition of the marital assets. The value of Wife's nonmarital teacher retirement account cannot be considered in such a way as to significantly and materially affect the division of marital property. Neither party committed misconduct during the marriage that would affect the division of assets. Daughter lived with Wife in a rented house after the parties separated, and Husband contributed nothing toward her support.

husband's father. The father, who was a contractor, also built the couple a house on the lot at no profit to himself. He was only reimbursed $24,500 for the cost of construction. After completion, the property was worth $35,000. The couple was only married six years and had no children. When they divorced, the house was sold at a substantial profit for approximately $75,000. The wife did not contribute anything to the increase in the value of the real estate during the marriage. Based on those specific facts, the trial court awarded husband an extra $9,600 of the net proceeds from the sale of the house to account for his father's contribution to the real estate. The husband's receipt of this additional cash resulted in 58/42 division of the marital property in his favor. Most importantly, the trial court simply considered the father's contribution as one of the many relevant factors to be weighed in dividing the marital property *Id.* at 353–54.

The facts before us are markedly different. Husband presented no evidence to establish the value of the real estate at the time it was given to Husband and Wife in 1989. There was evidence, however, that the parties obtained a $24,000 loan to finance home improvements shortly after acquiring the real estate. The loan was secured by a mortgage. They owned the marital real estate for 11 years before their separation in August 2000. During that time, the mortgage debt was reduced to approximately $9,000. This $15,000 debt reduction took place while Wife was the principal wage earner in the household. Wife's financial contributions significantly increased the net value of the real estate during the marriage. Accordingly, *Hedrick* does not support the trial court's disproportionate division of marital property between Husband and Wife.

We reach the same conclusion concerning the contribution made by Husband's family to Wife's education. Husband offered no evidence as to the value of this contribution, other than to testify that his parents paid for the portion of Wife's tuition, books and transportation expenses not covered by loans and grants. Wife testified that the parents' contribution amounted to no more than $1,500. Moreover, the value of the parents' contribution is diminished because Wife worked either part time or full time while she was going to school, thus making her own contribution to the household income. Once again, appropriate consideration of this factor would not authorize the disproportionate award of marital property that occurred here.

In conclusion, we do not find that any of these factors upon which Husband relies are of sufficient weight to support the trial court's decision to give Husband virtually all of the marital assets from a marriage lasting 29 years. In doing so, the trial court misapplied the law and abused its discretion. Therefore, the trial court's division of the marital assets must be reversed. Wife's first point is granted.

■ In Wife's second point on appeal, she contends the trial court erred in awarding Husband another "credit" of $6,274.80 from the proceeds of the sale of the marital real estate. This credit figure represents 70% of the marital credit card-debt which Wife was ordered to pay as part of the allocation of debt in the judgment. Wife argues that the trial court should have ordered her to pay the debt and hold Husband harmless. We agree.

The trial court found that the parties had marital credit-card debt totaling $8,964. The judgment required Wife to pay 70% and Husband 30% of this debt. It appears the trial court apportioned the credit-card debt in proportion to the par-

ties' respective annual incomes. Division of marital debt between the parties in this fashion is authorized by § 452.330.1.

■ A trial court possesses the authority to distribute marital debts "in the sense that one spouse may be assigned the primary duty to pay off the debt and hold the other spouse harmless on the same." *Cross v. Cross*, 30 S.W.3d 233, 236 (Mo. App.2000); *Rivers v. Rivers*, 21 S.W.3d 117, 122–23 (Mo.App.2000); *Wright v. Wright*, 1 S.W.3d 52, 60 (Mo.App.1999). That is not what the trial court did here. Its judgment ordered Wife to pay $6,274.80 of the credit-card debt and then, inexplicably, also deducted the same sum from the proceeds of the sale of the marital real estate and gave it to Husband. In effect, Wife is being required to pay the same debt twice. In so doing, the trial court misapplied the law and abused its discretion.

We reject Husband's argument that this credit should be upheld because the trial court was attempting to reimburse Husband for making $200 per month payments on the credit-card debts during the three years the dissolution case was pending. We find nothing in the judge's initial memorandum or subsequent judgment which states the credit is being given for this reason. Second, we note the trial court did give Husband credit for making these $200 per month payments by only awarding Wife retroactive child support for one year, instead of three. Husband is only entitled to receive credit for his payments one time. Therefore, the trial court misapplied the law and abused its discretion in granting Husband a credit in the amount $6,274.80 from Wife's share of the sale proceeds. Wife's second point is granted.

■ In Wife's third point, she contends the trial court erred in awarding Husband another "credit" for amounts paid by him for mortgage, line-of-credit, insurance and real estate tax payments after September 1, 2002. Wife argues Husband is not entitled to a credit for payments made with marital funds during a period of separation, but prior to division of the marital property. We agree.

This precise issue was addressed in *Reynolds v. Reynolds*, 861 S.W.2d 825 (Mo.App.1993). There, the trial court ordered the marital residence sold and gave the husband credit for one-half of all the mortgage payments he made from the date of separation to the date of sale. On appeal, the Eastern District of this Court held that the trial court erred in granting the credit:

> [T]he court also found that husband had contributed separate funds in the form of "payments on the mortgage since the date of separation." The court indicated husband was to be credited for these contributions.... Missouri statute and supporting caselaw firmly establish that marital property includes all property acquired by the couple subsequent to the marriage which does not fit into the exceptions of RSMo § 452.330.2.... As such, we find the trial court erred in crediting husband's contributions to the residence prior to dissolution as separate property.

*Id.* at 828 (citation and footnote omitted).

■ *Reynolds* was followed by the Western District in *Taylor v. Taylor*, 25 S.W.3d 634 (Mo.App.2000), which also dealt with payments made on real estate during separation. There, the trial court gave the husband a credit of $2,864 and wife a credit of $674 for payments they made on their cabin property while they were separated. On appeal, the wife argued that the payments were made with marital funds and should not have been credited to the parties. The Western District agreed and reversed the credits:

The evidence presented showed that the parties paid these sums with funds acquired during the marriage. Even income earned by a spouse is marital property up to the date of dissolution. Therefore, we find the trial court erred in crediting Husband and Wife with the payments on the cabin prior to the date of dissolution as separate property. Upon remand, the court should amend the judgment to remove these credits to the parties.

*Id.* at 643 (citations omitted). We follow *Reynolds* and *Taylor* and hold that the trial court misapplied the law and abused its discretion in granting Husband credit for mortgage, line-of-credit, insurance and real-estate tax payments made with marital funds prior to dissolution.[10]

■ We further note an equally valid, alternative ground for our holding. It is axiomatic that the division of marital property must be fair and equitable under the circumstances of the case. *In re Marriage of Michel*, 142 S.W.3d 912, 922 (Mo.App. 2004). The credit awarded Husband fails this test because: (1) the house was not used as a residence for any children in Husband's custody; (2) he had full control over and use of the premises during the entire three years the parties were separated; (3) Husband did not even live in the house much of that time; (4) the property had a reasonable rental value of $250–$300 per month; and (5) Husband chose to forego renting the property in order to allow a relative to live there rent-free. Under these circumstances, giving Husband full credit for all payments made from September 1, 2002, until the date of sale would be neither just nor equitable. Wife's third point is granted.

■ In Wife's fourth point, she contends the trial court erred in ordering Husband to pay retroactive child support for Daughter commencing on September 1, 2002.[11] Section 452.330.1 authorizes a trial court to award child support retroactively to the date the petition was filed. Whether to do so, however, is subject to the trial court's considerable discretion. *Abbott v. Perez*, 140 S.W.3d 283, 293 (Mo.App.2004). We will not reverse absent an abuse of that discretion. *Id.* "Nothing in § 452.340.8 or Rule 88.01 creates a presumption that an award calculated under the Form 14 formula is to be retroactive." *Mistler v. Mistler*, 816 S.W.2d 241, 255 (Mo.App.1991); *see Harrison v. Harrison*, 871 S.W.2d 644, 647 (Mo.App.1994).

■ In determining whether to award retroactive child support, one of the factors the trial court must consider is the financial needs and resources of the parents. § 452.340.1(2); *Malawey v. Malawey*, 137 S.W.3d 518, 526 (Mo.App.2004). The trial court ordered Husband to begin paying child support as of September 1, 2002, in the amount of $238. In selecting that effective date, the trial court found Husband had been paying approximately the same amount in mortgage and credit-card payments that he would have been required to pay in child support if that obligation had been imposed upon him earlier. Furthermore, it is undisputed that Wife paid nothing on these marital debts after the parties separated. Husband's voluntarily assumption of the responsibility for paying these joints debts did not

---

10. Mortgage payments, etc., that are made while the dissolution case is pending can be considered by the trial court when deciding how to allocate marital debt between the parties. *See In re Marriage of Lindeman*, 140 S.W.3d 266, 276 (Mo.App.2004).

11. The trial court's finding that Son was emancipated has not been challenged on appeal.

worsen Wife's financial condition. Her financial resources would not have been significantly better if Husband had been required to pay child support and Wife had been required to contribute one-half of the money necessary to pay these marital debts. We believe the trial court adequately considered the parties' respective financial positions in selecting an effective date for commencement of retroactive child support payments. Accordingly, the trial court did not abuse its discretion in denying Wife's request for child support payments retroactive to the date the petition was filed. Wife's fourth point is denied.

## IV. Disposition

■ We are obligated by Rule 84.14 to finally dispose of a case on appeal, unless justice otherwise requires. To that end, we are authorized to "give such judgment as the court ought to give." *Id.; see also Shipp v. Shipp*, 59 S.W.3d 647, 650 (Mo. App.2001) (remanding the case with directions that the trial court award the wife another $20,000 to effect a just division of the property); *In re Marriage of V.A.E.*, 873 S.W.2d 262, 269 (Mo.App.1994) (remanding the case with directions to enter an amended decree awarding the husband one-third of the marital property because the original division was too lopsided in favor of wife).

The trial court's division of the parties' personal property and allocation of debt between them resulted in Husband receiving net marital proceeds of about $7,000. Wife's debt allocation exceeded the value of the property awarded to her by about $5,000. This amounts to a $12,000 differ-

ence in Husband's favor in a case with only $53,500 in net marital property. If the trial court's erroneous credits to Husband are corrected and the net proceeds from the sale of the marital real estate are divided equally between the parties, Husband will receive more than 61% and Wife less than 39% of the net marital assets.[12] This is a sufficient difference in the disposition of the marital property to permit appropriate consideration of Wife's greater earning capacity, the contributions of Husband's parents and the value of Wife's nonmarital teacher retirement account without allowing this last factor to have a substantial, material effect on the division of the marital property. *See Woodson*, 92 S.W.3d at 785.

In conclusion, we reverse paragraphs 6 a) through d) in the decretal portion of the judgment because the trial court erred in awarding Husband the "credits" found therein. On remand, we direct the trial court to enter an amended judgment which deletes these credits from decretal paragraph 6. We further direct the trial court to retain the provision in said paragraph requiring that the net proceeds from the sale of the real estate be split equally between the parties. In all other respects, the judgment is affirmed.

PARRISH, P.J., and BARNEY, J., Concur.

---

12. Husband will receive more and Wife will receive less because our calculations do not include any deduction for the expenses of the sale of the marital real estate. Once these deductions are made, the net proceeds available for division between the parties will be less. Since Wife was allocated $5,000 more in debt than the value of the personal property she was awarded, any reduction in the net proceeds resulting from the sale of the marital real estate will inevitably decrease Wife's share of the net marital assets.