

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| CECELIA CARLIS DICKERSON, | ) | No. ED106855 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| vs. | ) | |
| | ) | |
| CHARLES DANIEL DICKERSON, | ) | Honorable Benjamin F. Lewis |
| | ) | |
| Appellant. | ) | Filed: June 28, 2019 |

### OPINION

Charles Daniel Dickerson ("Husband") appeals from the judgment of the trial court dissolving his marriage to Cecelia Carlis Dickerson, n/k/a Cecelia Carlis Edwards ("Wife"). Husband asserts three points on appeal, arguing the trial court abused its discretion in awarding Wife $800 in monthly maintenance, ordering Husband to pay Wife a property equalization payment of $7,350, and ordering Husband to pay Wife's attorney $3,000 for attorney's fees. Finding no error, we affirm the judgment.

Factual and Procedural Background

Husband and Wife were married in 1992 and separated in September of 2014. Wife filed a Petition for Dissolution of Marriage on July 15, 2015. Husband filed a Counter-Petition for Dissolution. The parties are familiar with the facts, therefore, we will not recite them here. We

will discuss the relevant facts in the Discussion section below as necessary to resolve the issues raised on appeal.

The case was tried before the court on February 23, 2018. Both parties testified and presented evidence regarding Wife's disability, their respective incomes and reasonable expenses, marital assets and debts, and the disposition of marital property. Wife sought an equitable division of the marital assets and debts, monthly maintenance, and attorney's fees. Husband opposed Wife's request for attorney's fees, and requested the court award Wife $300 in monthly maintenance.

After hearing all the evidence, the trial court entered a judgment dividing the marital assets and debts, ordering Husband to pay Wife an equalization payment of $7,350, awarding Wife $800 in permanent, modifiable monthly maintenance, and ordering Husband to pay $3,000 to Wife's attorney for outstanding legal fees. Husband filed a Motion for Reconsideration and Amendment and/or for New Trial, which was denied. This appeal follows.

Points on Appeal

Husband asserts three points on appeal. In Point I, Husband argues the trial court erred in awarding maintenance to Wife in the amount of $800 per month because there was no evidence to support the amount of the award, and the trial court's order is against the weight of the evidence regarding Wife's reasonable expenses, as well as Husband's income, reasonable expenses, and ability to pay. In Point II, Husband argues the trial court erred in ordering him to pay Wife a property equalization payment in the amount of $7,350 because there was no evidence to support the amount of the award, the court prohibited counsel from adducing evidence regarding Wife's financial misconduct, and the court's order is against the weight of the evidence. In Point III, Husband argues the trial court erred in ordering Husband to pay

$3,000 towards Wife's attorney's fees and court costs because the order was against the weight of the evidence and an abuse of discretion in that there was no foundation laid as to the amount or reasonableness of the fees awarded, Wife's actions resulted in excess attorney's fees, and the court declined to hear evidence as to Wife's financial misconduct.

## Standard of Review

In a dissolution of marriage case, as with any court-tried case, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Cureau v. Cureau*, 514 S.W.3d 685, 689 (Mo. App. E.D. 2017). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id*. We view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's judgment, and disregard all contrary evidence and inferences. *Id*. Where the trial court did not make a specific finding regarding a disputed factual issue, we consider that fact found in accordance with the result reached. *Id*.; *see also* Rule 73.01(c).[1]

## Discussion

**I.      The Trial Court did not Err in Awarding Wife $800 in Maintenance (Point I)**

In Point I, Husband argues the trial court erred in awarding maintenance to Wife in the amount of $800 per month because there was no evidence to support the amount of the award, and the trial court's order is against the weight of the evidence regarding Wife's reasonable expenses, as well as Husband's income, reasonable expenses, and ability to pay. We disagree.

The rules governing maintenance awards in dissolution cases are found in Section 452.335. In determining whether to award maintenance, the court must conduct a two-step

---

[1] All rule references are to Missouri Supreme Court Rules (2018), unless otherwise indicated.

analysis. *Kratzer v. Kratzer*, 520 S.W.3d 809 (Mo. App. E.D. 2017). First, the court must find the spouse seeking maintenance: "(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." Section 452.335.1.[2] If this threshold test is satisfied, the court must determine the amount and duration of maintenance after considering the following statutorily-prescribed factors:

> (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (3) The comparative earning capacity of each spouse;
> (4) The standard of living established during the marriage;
> (5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
> (6) The duration of the marriage;
> (7) The age, and the physical and emotional condition of the spouse seeking maintenance;
> (8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
> (9) The conduct of the parties during the marriage; and
> (10) Any other relevant factors.

Section 452.335.2.

"A trial court's maintenance award shall be limited to the reasonable needs of the spouse seeking maintenance; however, the spouse's reasonable needs need not be limited to the spouse's actual expenses at the time of dissolution." *L.R.S. v. C.A.S.*, 525 S.W.3d 172, 189 (Mo. App. E.D. 2017). The court may consider evidence of prospective expenses where a party's actual pre-dissolution expenses do not reflect their expected post-dissolution expenses. *See Orange v.*

---

[2] All statutory references are to RSMo (2016), unless otherwise indicated.

*White*, 502 S.W.3d 773, 780 (Mo. App. E.D. 2016); *Sweet v. Sweet*, 154 S.W.3d 499, 506 (Mo. App. W.D. 2005).

The trial court is vested with broad discretion in awarding maintenance, and we will only reverse its ruling upon finding an abuse of discretion. *Cureau*, 514 S.W.3d at 689. The trial court abuses its discretion only when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id*. We defer to the trial court even if the evidence could support a different conclusion. *Id*. If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion. *Id*.

Here, the threshold test under Section 452.335.1 was satisfied because Husband conceded that a maintenance award was warranted by requesting that the court award Wife $300 in monthly maintenance, which was the amount Husband had been paying Wife at the time of trial. Husband does not claim the court erred in making its maintenance award permanent. Therefore, the only question is whether the court abused its discretion in setting the amount of maintenance at $800 per month.

After reviewing the evidence, we find no abuse of discretion. Viewed in the light most favorable to the judgment, the evidence presented at trial supports the following facts. Wife is unable to work due to permanent physical disability, and her sole source of income is Social Security Disability. Wife's gross monthly disability benefit is $906.70, from which $144 is automatically deducted each month to pay for the cost of her Medicare and private health insurance premiums. Wife's reasonable expenses are $1,849 per month, based on her testimony regarding actual current expenses and estimates of the increased costs for housing and medical care she will have to pay after the divorce is finalized. Based on these figures, Wife's reasonable

monthly expenses exceed her income by $942.30. Wife owns very little separate property, and was awarded a total of $9,350 in marital assets, including $2,000 in personal property and $7,350 in cash.[3] Husband and Wife were married 26 years. All of this evidence supports the trial court's maintenance award based on the relevant statutory factors in Section 452.335.2. Specifically, factors (1), (3), (4), (5), (6) and (7) all weigh strongly in favor of awarding Wife $800 in monthly maintenance, in light of Wife's limited financial resources, her nonexistent earning capacity, the standard of living during the marriage, Wife's lack of assets, the long duration of the marriage, and Wife's advanced age and complete physical disability.

In contrast, Husband's net income is $4,468 per month, based on Wife's testimony regarding bank statements showing the average paycheck deposits into Husband's various accounts over a six-month period.[4] Husband's reasonable expenses were $3,514 per month, based on his own Income and Expense Statement.[5] These figures demonstrate Husband earns at least $954 per month more than his reasonable expenses and is, therefore, able "to meet his needs while meeting those of the spouse seeking maintenance[.]" *See* 452.335.2(8). Moreover, as explained below, Husband was also awarded possession of the marital home as well as the majority of all marital assets.

---

[3] Wife was also awarded half of the value in each of the marital bank accounts and retirement accounts, but there was no evidence regarding the value of any of these accounts because Husband had exclusive control of these accounts and failed to produce any records demonstrating their value.

[4] Although the bank records were admitted into evidence as Wife's Exhibit Number 10 as evidence of Husband's income, Husband failed to include this exhibit in the record on appeal, as required by Rule 81.12(a). Accordingly, we presume the information contained in the records supported the trial court's decision and was not favorable to Husband's position. *See Thomas v. Harley-Davidson Motor Co. Grp., LLC*, 571 S.W.3d 126, 139 (Mo. App. W.D. 2019); *Rogers v. Hester*, 334 S.W.3d 528, 541 (Mo. App. S.D. 2010); *Bruns v. Bruns*, 186 S.W.3d 449, 454 (Mo. App. W.D. 2006) ("All evidentiary omissions in the record on appeal are presumed to support the trial court's decision. . . . This court may assume omitted portions of the record are unfavorable to [appellant].")

[5] There was also evidence that some of Husband's claimed expenses were not reasonable, including $200 donation to charity which Husband did not actually pay every month, and Husband's telephone bill of $215 per month.

6

Based on the evidence presented at trial, the $800 in monthly maintenance awarded to Wife was less than the amount she needed to meet her reasonable needs and well within Husband's ability to pay after meeting his own reasonable needs. Accordingly, we find the evidence supported the amount of the maintenance award, and the trial court did not abuse its discretion.

Husband argues the trial court erred in calculating Wife's reasonable expenses because there was no evidence to support Wife's claims that she needed $600 for housing and $250 for prescriptions in that these costs were speculative since Wife admitted in her testimony that she was not currently paying these expenses and there was no evidence that Wife's housing or medical care circumstances would change. We disagree.

Husband is correct that "an award of maintenance cannot be based on a speculative future condition." *Sweet*, 154 S.W.3d at 506 (citation and quotation omitted). However, a spouse's reasonable expenses "need not be limited to the spouse's actual expenses at the time of dissolution." *L.R.S.*, 525 S.W.3d at 189. When determining a spouse's reasonable needs, the court may take into consideration prospective expenses, such as expected increases in expenses caused by the dissolution. *See id*; *Orange*, 502 S.W.3d at 780. Such considerations are not uncommon due to changes in one or both spouses' health insurance and living arrangements following a divorce. *See*, *e.g.*, *Orange*, 502 S.W.3d at 780 (wife's reasonable expenses for housing would increase from $200 per month to $600 per month because wife intended to move out of her mother's home and into her own apartment after the dissolution was final); *Sweet*, 154 S.W.3d at 506 (wife's reasonable expenses for medical prescriptions would increase by $270 per month "once the dissolution was final" because wife would no longer be "covered under Husband's employer's insurance").

7

Here, similar to the facts in *Orange*, there was evidence that Wife's housing expenses were expected to increase by $600 after the dissolution because she would no longer be able to take advantage of the generosity of a friend who had been allowing Wife to live with her rent-free. *See Orange*, 502 S.W.3d at 780. Wife testified that the friend would begin to charge her $600 per month for rent and utilities after the dissolution was final. Also, similar to the facts in *Sweet*, there was evidence that Wife's expenses for prescription drugs would increase by $250 per month after the dissolution. *Sweet*, 154 S.W.3d at 506. Wife testified that she would no longer have access to Husband's health savings account, which she had been using to pay $250 per month in co-pays for the fifteen to twenty medications she takes on a daily basis. Wife's testimony regarding her prospective expenses for housing and medical care was not mere speculation regarding "potential future conditions," but rather concrete evidence of expected increases in her expenses following the dissolution. Therefore, the court did not err in including these costs in Wife's reasonable expenses when determining the amount of the maintenance award. *See Orange*, 502 S.W.3d at 780; *Sweet*, 154 S.W.3d at 506.

Next, Husband argues Wife's income "should be adjusted to a total of $1,050.70 to accurately capture her total monthly disability benefit income," because Wife deducted the cost of her health insurance premiums from her income and also included the same amounts as expenses, resulting in a "double accounting." We acknowledge Wife's original Income and Expense Statement appears to include the cost of her Medicare and health insurance premiums as both a deduction in her income as well as a reasonable expense. However, Wife's trial testimony regarding her income and expenses corrected this issue. Wife testified that her gross Social Security Disability benefit is $906.70, from which $144 is automatically withheld each month to pay for her Medicare and private health insurance premiums. Wife also testified that her

8

reasonable expenses were $1,849.00, which is $267.83 less than the amount claimed on her Income and Expense Statement. Nothing in the record indicates Wife included the cost of her Medicare and health insurance premiums in the $1,849.00 she is claiming for reasonable expenses. Moreover, there is no evidence that Wife's actual *gross* income is $1,050.70. Husband's assertion that Wife testified her *net* income was $906.70 misstates the evidence, as Wife repeatedly and consistently testified that the amount of $906.70 represented her total, gross Social Security Disability payment, from which her Medicare and health insurance premiums are automatically deducted. Nothing in the record indicates the trial court erred in calculating Wife's reasonable expenses.

Finally, Husband argues the trial court "failed to adequately consider all the relevant factors set forth in [Section] 452.335.2 when determining the amount of maintenance to be ordered, including the amount of maintenance required by Wife, and Husband's ability to pay maintenance in the amount required[.]" We find this argument is not preserved for appeal because Husband did not request written findings on the statutory factors in Section 452.335.2, as required by Rule 73.01(c), nor did he object to the lack of written findings in a motion to amend the judgment.[6] *See Cule v. Cule*, 457 S.W.3d 858, 863 (Mo. App. E.D. 2015). In the absence of any specific factual findings regarding the factors in Section 452.335.2, we must presume the trial court considered these fact issues and found facts "in accordance with the result reached." Rule 73.01(c); *see Cureau*, 514 S.W.3d at 689.

---

[6] Rule 73.01(c) provides, in pertinent part:
> (c) The court shall render the judgment it thinks proper under the law and the evidence.
> . . .
> The court may, or if requested by a party shall, include in the opinion findings on the controverted material fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.
> All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

For the foregoing reasons, we find the trial court did not err in ordering Husband to pay Wife $800 in monthly maintenance. The record clearly supports the trial court's finding that Wife needs $800 in maintenance to meet her reasonable expenses, and Husband is able to pay this amount while meeting his own reasonable expenses. Point I is denied.

**II.    The Court did not Err in Ordering Husband to pay Wife a property equalization payment of $7,350 (Point II)**

In Point II, Husband argues the trial court erred in ordering him to pay Wife a property equalization payment in the amount of $7,350 because there was no evidence to support the amount of the award, the court prohibited counsel from adducing evidence regarding Wife's financial misconduct, and the court's order is against the weight of the evidence. We disagree.

The rules for dividing marital property and debts in a dissolution case are governed by Section 452.330.1, which provides that the trial court:

> . . . shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:
> (1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
> (2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
> (3) The value of the nonmarital property set apart to each spouse;
> (4) The conduct of the parties during the marriage; and
> (5) Custodial arrangements for minor children.

Section 452.330.1; *see Workman v. Workman*, 293 S.W.3d 89, 96 (Mo. App. E.D. 2009).

The trial court is vested with broad discretion in dividing marital property. *Cureau*, 514 S.W.3d at 689. We presume the division of property is correct, and the party challenging the property division bears the burden of overcoming the presumption. *Id*. We will affirm the trial court's division of marital property unless it is so unduly weighted in favor of one party so as to constitute an abuse of discretion. *Id*. The trial court abuses its discretion only when its ruling is

10

clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id*. If reasonable minds could differ about the propriety of the trial court's decision, there is no abuse of discretion. *Id*.

Just as in Point I above, we acknowledge the judgment does not contain written findings regarding the statutory factors the court was required to consider under Section 452.330.1. However, Husband did not request written findings, as required by Rule 73.01(c), or raise this claim of error in a motion to amend the judgment. *See Cule*, 457 S.W.3d at 863. Accordingly, we consider all fact issues where the court made no specific findings "as having been found by the court in accordance with the result reached." *Id*.; *see Cureau*, 514 S.W.3d at 689.

Here, the trial court's property division awarded each spouse the vehicle and other personal property in their possession at the time of trial, one half of the value of all marital bank accounts and retirement accounts, any property or insurance policy titled solely in their name, and ordered each spouse to pay all debts solely in their name and medical bills incurred on their behalf. The court also awarded Husband the marital home, ordered Husband to pay all other marital debt including $61,116 in debt associated with the marital home and $2,300 for a line of credit, and awarded Wife a ring she received from her Father and three "50 State" quarter collections she compiled during the marriage as gifts for her children or grandchildren. Finally, the court ordered Husband to pay Wife an equalization payment of $7,350 to "effectuate a fair and equitable distribution of marital property and debts."

We find there is substantial evidence in the record supporting the trial court's finding that a $7,350 payment from Husband to Wife was necessary to effect a fair and equitable distribution of marital property and debts. The evidence introduced by Wife indicated the marital home

11

awarded to Husband had about $28,884 in equity,[7] Husband's truck was worth $10,000 more than Wife's car, and the other personal property awarded to Husband was worth $22,736 more than the personal property awarded to Wife.[8] These values were supported by Wife's testimony, photographs,[9] and an itemized list of property that included Wife's estimated value for each item. In contrast, Husband testified that the marital home had *negative* equity of $12,000, his truck was worth $10,000, and the only other item of personal property in his possession worth more than $100 was a refrigerator.

The court rejected both parties' evidence regarding property value, instead settling on amounts somewhere between the values claimed by each party. The court found the value of personal property awarded to Husband including his truck was $14,000, while the value of the personal property awarded to Wife including her car was $2,000. The court found marital debts associated with the marital home were $61,116, and Husband owed $2,300 on a line-of-credit. However, the judgment contains no other findings regarding the value of other marital assets, such as the marital home, bank accounts, and retirement or pension accounts. The court expressly stated "[a]t the time of trial, values of certain accounts and pensions were unknown[.]"

Viewing the record in the light most favorable to the judgment, we find the marital home had $28,884 in equity and the marital bank accounts contained approximately $7,350. These figures are based on Wife's testimony regarding the value of the marital home, the court's findings regarding the value of the debts associated with the home, and Husband's concession in

---

[7] Wife testified the house was worth $90,000, and the trial court found the total debt associated with the property was $61,116, resulting in a net value of $28,884.

[8] Wife's testimony and trial exhibits demonstrated the personal property in Husband's possession was worth $25,175, while the personal property in Wife's possession was worth $2,439.

[9] Because Husband failed to include these photographs in the record on appeal, or offer any explanation for their absence, we assume they would have contained evidence supporting the court's judgment and unfavorable to Husband. *See* Rule 81.12(a); *Thomas*, 571 S.W.3d at 139; *Rogers*, 334 S.W.3d at 541; *Bruns*, 186 S.W.3d at 454.

12

his brief that the $7,350 equalization payment he was ordered to pay Wife "represent[ed] the vast majority of the parties' total cash assets at the date of trial." Therefore, the total ascertainable value of all personal property and cash was $23,350,[10] excluding the marital home, for which the court found no value, and the retirement accounts, for which there is no evidence regarding their value.

The judgment awarded Wife a total of $9,350 including the equalization payment, or 40% of the value of all marital personal property and cash, while it awarded Husband $14,000, or 60%. However, these percentages do not take into consideration the $90,000 value of the marital home awarded to Husband, the $61,116 in debt associated with the residence, or the $2,300 in other marital debt assumed by Husband. Once these values are factored in, Husband received 81.3% of the net value of all marital assets, while Wife received 18.7%.

We cannot say the trial court abused its discretion in ordering Husband to pay Wife $7,350 to effect a fair and equitable distribution of the marital assets. Without the equalization payment, Wife would have received a mere 4% of net value of all marital assets. Husband has failed to show the trial court's division of property was so "unduly weighted in favor of Wife that it amounts to an abuse of discretion," and thus, has failed to overcome the presumption the division of property was correct. *See Cureau*, 514 S.W.3d at 691.

Nonetheless, Husband argues the court abused its discretion in ordering Husband to pay Wife $7,350 because "there was no evidence to support the awarded amount." We disagree. As explained above, Wife's testimony and evidence regarding the value of the marital home and personal property would have supported an equalization payment much larger than $7,350. Because the trial court is free to accept or reject all, part, or none of the testimony of a witness, it

---

[10] This value includes the $14,000 in personal property awarded to Husband, the $2,000 in personal property awarded to Wife, and $7,350 in cash.

13

had discretion to accept Wife's testimony concerning the value of the marital property. *See Joyner v. Joyner*, 460 S.W.3d 467, 477 (Mo. App. W.D. 2015). We defer to the trial court regarding factual findings and credibility determinations. *Courtney v. Courtney*, 550 S.W.3d 522, 530 (Mo. App. E.D. 2017). We cannot say the court abused its discretion in awarding Wife an equalization payment substantially lower than the amount supported by the evidence.

Husband also argues the trial court abused its discretion in ordering Husband to pay Wife $7,350 "in light of Husband's payment of all marital debt and upkeep for the marital home during the pendency of the action." We disagree. Husband was not entitled to credit for any payments made using marital assets. *See Reese v. Reese*, 155 S.W.3d 862, 874 (Mo. App. S.D. 2005) ("Husband is not entitled to a credit for payments made with marital funds during a period of separation, but prior to division of the marital property.") There is no dispute that all payments made towards marital debt or home maintenance during the proceedings were made with marital assets, and there is no evidence that Husband used his own separate property to make these payments. *See Comninellis v. Comninellis*, 99 S.W.3d 502, 511 (Mo. App. W.D. 2003) (under the source of funds rule, property acquired by a spouse using their own separate funds, in whole or in part, remains that spouse's separate property to the extent of their contributions from their separate funds). The fact that the court ordered Husband to assume the majority of the marital debt following the dissolution does not mean Husband should receive credit for payments made towards that debt during the marriage, at a time when these were still marital debts.

Finally, Husband argues the trial court erred in ordering Husband to pay Wife an equalization payment of $7,350 because "the trial court prohibited counsel from adducing evidence regarding [Wife's] financial misconduct." We disagree. There is no evidence that the trial court prohibited Husband from introducing evidence about Wife's financial misconduct.

14

The transcript shows Husband cross-examined Wife regarding overdraft transactions, and Wife admitted writing checks that bounced. The court did not strike Wife's testimony and there is no indication in the record that any other evidence of Wife's financial misconduct exists because Husband neither claimed additional evidence existed nor made an offer of proof regarding additional evidence. Although the court instructed Husband to limit further questioning to current assets, Husband did not object to this instruction, nor did Husband tell the court he was attempting to introduce evidence of Wife's financial misconduct, even after the court asked why Husband was pursuing this line of questioning. Even if we agreed with Husband that the court's instruction prohibited him from introducing additional evidence of Wife's financial misconduct, we could not review this claim because Husband failed to make an offer of proof regarding any additional evidence he intended to present. "We generally will not convict the trial court of error on an issue that was not put before it to decide." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 383 (Mo. App. E.D. 2014).

For the foregoing reasons, we find the trial court did not abuse its discretion in ordering Husband to pay Wife an equalization payment of $7,350. There was substantial evidence in the record to support the trial court's finding that a payment in this amount was necessary to "effectuate a fair and equitable distribution of marital property and debts." Point II is denied.

### III.    The Court did not Err in Awarding Wife $3,000 in Attorney's Fees (Point III)

In Point III, Husband argues the trial court erred in ordering Husband to pay $3,000 towards Wife's attorney's fees because the order was against the weight of the evidence and an abuse of discretion in that there was no foundation laid as to the amount or reasonableness of the fees awarded, Wife's actions resulted in excess attorney's fees, and the court declined to hear evidence as to Wife's financial misconduct. We disagree.

15

The trial court enjoys "broad discretion in awarding attorney's fees," and will only be reversed upon a finding of an abuse of discretion. *Wagner v. Wagner*, 542 S.W.3d 334, 343 (Mo. App. E.D. 2017). In civil litigation, each party is generally required to pay his or her own attorney's fees "unless there is a statute or contract authorizing an award of fees or in the case of unusual circumstances." *Rallo v. Rallo*, 477 S.W.3d 29, 43 (Mo. App. E.D. 2015). "In dissolution cases, [S]ection 452.355.1 provides the statutory authority and standard for awarding fees." *Id*. Section 452.355.1 gives the trial court discretion to order one party to pay "a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment." Section 452.355.1; *Wagner*, 542 S.W.3d at 343. The trial court may only enter an award of attorney's fees under Section 452.355.1 "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]" Section 452.355.1. "The trial court is considered an expert as to the necessity, reasonableness, and value of attorney's fees and thus, the trial court's decision is presumptively correct." *Schubert v. Schubert*, 366 S.W.3d 55, 75 (Mo. App. E.D. 2012) (quoting *Kelly v. Kelly*, 340 S.W.3d 673, 680 (Mo. App. W.D. 2011)).

Here, the trial court ordered Husband "to pay $3,000 to [sic] direct to [Wife]'s attorney as and for attorney fees[.]" We find this was not an abuse of discretion. Husband concedes in his brief that "evidence was admitted that certain resources are available to Husband which might make him better financially equipped to pay attorney's fees incurred by Wife." This concession alone demonstrates the trial court did not abuse its discretion because "[o]ne spouse's greater

16

ability to pay is sufficient to support an award of attorney's fees to the other spouse." *Fike v. Fike*, 509 S.W.3d 787, 803 (Mo. App. E.D. 2016).

However, the trial court's award of attorney's fees was not based solely on Husband's greater ability to pay. The evidence presented at trial showed that Wife was virtually on the brink of financial destitution throughout the proceedings. This was due in part to her medical disability, which prevented her from working, and in part to Husband's conduct in limiting Wife's access to marital assets, including by removing Wife's name from a marital checking account. As a result, Wife was unable to afford even the most basic expenses, such as housing, let alone attorney's fees. In contrast, there was evidence that Husband was withdrawing an average of $1,383 per month in cash from marital bank accounts in the months leading up to trial, including $3,300 in December, just three months prior to trial. The extreme disparity in the financial resources and Husband's conduct in limiting Wife's access to marital assets during the pendency of the proceedings supports the trial court's order that Husband pay a portion of Wife's attorney's fees. *See Schubert*, 366 S.W.3d at 75 (affirming an award of attorney's fees to wife where there was evidence "Husband liquidated marital assets to pay his attorney's fees without Wife's approval, dissipated marital funds, and made no efforts to support Wife or Daughter during the pendency of the case").

Nonetheless, Husband argues the trial court abused its discretion because there was no evidence of "unusual circumstances" to justify an award of attorney's fees. In support of this argument, Husband cites *Schwartzkopf v. Schwartzkopf*, where this Court held: "To require one party to pay the attorney's fees of the other mandates a showing of unusual circumstances justifying deviation from the normal rule that each party should bear his or her own litigation costs in a dissolution action." *Schwartzkopf v. Schwartzkopf*, 9 S.W.3d 17, 24 (Mo. App. E.D.

17

1999). We must reject this argument in light of our more recent holding in *Rallo*, where we expressly overruled the requirement of finding "unusual circumstances" prior to awarding attorney's fees in a dissolution case, stating "it is unnecessary and inappropriate to address whether the case also involves unusual circumstances" because there is no such requirement in Section 452.355.1, which "provides the statutory authority and standard for awarding fees." *Rallo*, 477 S.W.3d at 43. Following our holding in *Rallo*, this Court no longer requires a finding of "unusual circumstances" to support an award of attorney's fees.[11]

Husband also argues the trial court abused its discretion in awarding attorney's fees to Wife because the evidence that he was "better financially equipped to pay attorney's fees incurred by Wife" was insufficient in that "mere proof of greater earning potential by one spouse is not sufficient, in itself, to support an award of attorney fees against that spouse," quoting *Hihn v. Hihn*, 237 S.W.3d 607, 611 (Mo. App. E.D. 2007) (quoting *Switzer v. Switzer*, 821 S.W.2d 125, 127 (Mo. App. E.D.1992), overruled on other grounds by *King v. King*, 865 S.W.2d 403 (Mo. App. E.D. 1993)). We must also reject this argument in light of our more recent holding in *Fike*, where we stated "[o]ne spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *Fike*, 509 S.W.3d at 803.

However, even if we applied the rule in *Hihn*, we would find the record supports the trial court's award of attorney's fees. The evidence demonstrates that Husband took advantage of his exclusive control over marital assets by removing Wife's name from a marital checking account and making substantial withdrawals from marital accounts in the months leading up to trial. As a

---

[11] Moreover, the attorney's fees at issue in this case were outstanding legal bills owed to Wife's attorney for legal work performed during the marriage. Therefore, they constituted marital debt subject to equitable division under 452.330.1, just like any other marital debt. Accordingly, the court also had authority to order husband to assume this marital debt under Section 452.330.1. *See Stratman v. Stratman*, 948 S.W.2d 230, 236-37 (Mo. App. W.D. 1997) ("There is no merit to Husband's argument that the trial court was precluded from including Wife's debts in the property division because they were primarily incurred for attorney fees.").

18

result, Wife was unable to access marital funds she would have otherwise been able to use to pay her expenses, including her attorney's fees. This is substantially more than "mere proof of greater earning potential by [Husband]." *See Hihn*, 237 S.W.3d 607, 611.

Accordingly, we find the trial court did not abuse its discretion in ordering Husband to pay $3,000 towards Wife's attorney's fees. Point III is denied.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
Angela T. Quigless, J.

Roy L. Richter, P.J., and
Robert M. Clayton III, J., concur.

19